```
N7KHCheC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        23 Cr. 302 (PGG)

YIYI CHEN,
                                      Conference
                Defendant.
------------------------------x
                                      New York, N.Y.
                                      July 20, 2023
                                      3:00 p.m.

Before:

                    HON. PAUL G. GARDEPHE,

                                      District Judge

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
KEVIN SULLIVAN
ALEXANDER LI
     Assistant United States Attorneys

MARLON G. KIRTON
     Attorney for Defendant

Also Present:

Dominique Jackson, Pretrial Services
Phanessia Liao, Interpreter (Mandarin)
```

1          (Case called)

2          MR. SULLIVAN:  Good afternoon, your Honor.  Kevin
3  Sullivan on behalf of the government.  I'm joined by my
4  colleague Alexander Li.

5          THE DEPUTY CLERK:  Counsel for defendant, please state
6  your appearance.

7          MR. KIRTON:  For the defendant, Marlon Kirton.  Good
8  afternoon, your Honor.

9          THE COURT:  Good afternoon.

10         We are here for purposes of continuing a bail hearing.
11  The defendant was arrested in Fiji by local authorities and
12  then taken into custody of the Drug Enforcement Administration
13  which transported her to the District of Hawaii.  Defendant was
14  presented in this district on June 26.  She was detained on
15  consent when presented but now seeks pretrial release.  The
16  defendant was arraigned on June 28, 2023, and the bail hearing
17  was continued until today.

18         The background is the defendant was indicted as part
19  of a multi-defendant conspiracy that allegedly shipped huge
20  quantities of precursor chemicals for fentanyl and fentanyl
21  analogues to the United States.  Two kilograms of these
22  chemicals were actually delivered to the United States, which
23  could have been used to create 50 kilograms of fentanyl
24  analogues.  The defendant allegedly marketed the conspiracy's
25  chemical products online, creating websites on which the sale

of precursor chemicals for fentanyl and fentanyl analogues were offered.

She is charged with a conspiracy to manufacture and distribute fentanyl and fentanyl analogues, conspiracy to import fentanyl precursor chemicals into the United States for use in manufacturing fentanyl, and conspiracy to commit money laundering.  Indictment, Dkt. No. 7.

The defendant seeks release on a package that includes the following conditions:  A $250,000 personal recognizance bond cosigned by one financially responsible person and secured by $50,000 in cash, home detention with GPS monitoring, the monitoring of the defendant's electronic devices with no access to the website of the corporate defendant, strict pretrial supervision, and surrender of all travel documents. Defendant's motion, Dkt. No. 11, page 1.

With that background, I'll hear from you, Mr. Kirton.

MR. KIRTON:  Yes, your Honor.  I'm going to basically rely on my prior filings with the Court, as well as my prior oral application in support of the bail motion.  I just wanted to add two issues today for the Court's consideration.  One involves the conditions of confinement of my client at the MDC. She's been incarcerated since about June the 26th of this year, about three weeks, and in that time, the air conditioning is out.  It's been out for about two weeks.  It's still out.  In that time she's had two stints of five days each without access

1  to any phone calls.  The phones were available for persons
2  making local calls, but my client's a Chinese national.  Her
3  calls are international, and she had at least ten days without
4  access to any telephone calls.
5      Your Honor, I think conditions of confinement at the
6  MDC obviously were not part of my initial application for
7  obvious reasons, nor were they part of my oral application on
8  the record, but I think those are issues that the Court could
9  consider today in support of our request for bail.
10     One other thing, which is more administrative than
11 anything else, I received this, I think it's called, Pretrial
12 Services report.  I think there are four counts listed.  My
13 client's only charged with three.  I don't know if that is
14 something pretrial takes into consideration.  I think she's
15 charged with three –– the government can correct me if I'm
16 wrong –– of the five counts of the indictment.  If that's true,
17 I don't know if Pretrial Services, when writing their
18 recommendation recommending no conditions would be appropriate
19 for bail, I don't know if they considered the ––
20     THE COURT:  Could you ––
21     MR. KIRTON:  –– the four counts instead of three.
22     THE COURT:  Could you direct my attention to what
23 you're talking about in the Pretrial Services report.
24     MR. KIRTON:  Yes, your Honor.  It's page 1.  There are
25 two boxes on the top.  The box to the right has Counts One,

1   Two, Three, and Five.  I don't think my client is charged in
2   all four of those counts.  I think she's charged in three of
3   those counts.  I think it's One, Two, and Five.  I don't think
4   she's charged with Count Three.  The government again could
5   correct me if I'm wrong.  I may be wrong, but if that is the
6   case, I don't know if Pretrial Services, when they made their
7   recommendation, thought that she was charged with four counts.
8           Other than that, your Honor, I rest on my prior
9   submissions, my prior oral application before this Court.
10          THE COURT:  All right.  I'm just looking at the
11  indictment to confirm the counts that the defendant is charged
12  in.  She is charged in Count One, which is the count that
13  charges importation or conspiracy to import fentanyl precursors
14  into New York, into the United States.  She is a defendant in
15  that count.  She's a defendant in Count Two, which charges her
16  with conspiracy to import fentanyl precursor chemicals with
17  intent to manufacture fentanyl.  She is not charged in Count
18  Three, so the Pretrial Services report appears to be in error
19  as far as that goes.  And then she is charged in Count Five
20  with conspiracy to commit money laundering.
21          So, Mr. Kirton, you are correct, to the extent the
22  Pretrial Services report lists Count Three as a charge against
23  your client, the Pretrial Services report is in error.
24          All right.  I'll hear from the government.
25          MR. SULLIVAN:  Your Honor, just initially, the

1   government agrees with the Court's reading of the indictment.
2   The defendant is not charged in Count Three.  Of course, the
3   government would note that Count One, as the pretrial report
4   accurately reflects, is the count that carries the ten-year
5   mandatory minimum and from which the rebuttable presumption
6   stems from.
7          With respect to the reason for the continued hearing
8   and Mr. Kirton's submission of July 5, we won't rehash what
9   we've put forward in our July 7 submission.  I think we've
10  sufficiently refuted that there is any diminished strength of
11  the weight of the evidence with respect to the intent of the
12  order that was placed or the April 10 call and the numerous
13  other calls and communications on which this defendant —— in
14  which this defendant was involved.
15         With respect to this new point regarding conditions of
16  confinement, to the extent that we've been made aware of any
17  issues, for example, the issue with the phones which Mr. Kirton
18  did apprise us of, we immediately looked into it, sought to
19  resolve it.  Last we understood was that it was resolved.
20  Phone access was restored.  Mr. Kirton raised another issue
21  yesterday just regarding access to certain property items in
22  the commissary.  We said we'd look into it.  So we've been
23  responsive on that.  Otherwise, the government has not been
24  aware of any other issues.  And to the extent that Mr. Kirton
25  continues to keep us apprised, we will, of course, look into it

1    and do what we can to resolve it.

2               We do not think that the point furthers any argument

3    for the release of this defendant.  This defendant is

4    nonetheless a national of China, a country with which we have

5    no extradition treaty.  She is facing significant narcotics

6    charges involving a deadly substance manufacturing and

7    trafficking enormous quantities of a deadly substance.  So for

8    all the reasons we have cited in our earlier presentation

9    before the Court on June 28 and in our submissions, we

10   respectfully submit that there's no conditions or combination

11   of conditions that can reasonably assure the defendant's

12   continued appearance in these proceedings or mitigate any

13   danger to the community.

14            MR. KIRTON:  Your Honor, if I just may, just one brief

15   issue.  In terms of the air conditioning issue, there was — we

16   have — I'm part of a Listserv involving the Federal Defenders

17   office.  It's my understanding that the Federal Defenders

18   office has raised the issue of the air conditioning at the MDC

19   for all the female inmates.  I believe that's an ongoing issue.

20   It's still a problem.  I know that the Court could take notice

21   of the heatwave that's been going through the United States of

22   America over the last three weeks or so, and I imagine the heat

23   situation is probably worse in a place like the MDC.  Even

24   though it's not the male facility with the number of inmates,

25   it's still a jail.  It's still the summer in general, but it's

1  also — we are as a country in the middle of a pretty
2  significant heatwave.
3      So I think that, even though I didn't particularly
4  raise this with this prosecution team, the issue generally has
5  been raised by Federal Defenders with the BOP, and I think it's
6  a pretty significant issue the conditions of confinement given
7  the last couple of weeks, and it's still not resolved.
8      THE COURT:  In order for a defendant to be detained
9  pending trial, the government must demonstrate by a
10 preponderance of the evidence that there are no conditions or
11 combination of conditions that will ensure the defendant's
12 return to court or establish by clear and convincing evidence
13 that there is no condition or combination of conditions that
14 will reasonably assure the safety of the community.
15     Here, the government seeks detention both on risk of
16 flight and danger to the community grounds.  Because of the
17 charges pending against the defendant, there is a rebuttable
18 presumption under 18 United States Code, Section 3142(e)(3)(B)
19 that there is no condition or combination of conditions that
20 will reasonably ensure the defendant's return to court and the
21 safety of the community.
22     The Bail Reform Act, Title 18, United States Code,
23 Section 3142(g) directs me to consider the following factors in
24 determining whether pretrial release is appropriate:  The
25 nature and circumstances of the offense or offenses; the weight

of the evidence against the defendant; her personal history and characteristics, including her character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct substance abuse, criminal history, and record concerning appearances at court proceedings; and, finally, the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 United States Code, Section 3142(g).

As to the nature of the offense to which the defendant is charged, the charges pending against her are extremely serious.  As I noted, she is charged with conspiring to ship huge quantities of precursor chemicals for fentanyl and fentanyl analogues to the United States.  200 kilograms of these chemicals were actually delivered to the United States.  The government has represented that those 200 kilograms could have been used to create 50 kilograms of fentanyl analogues, which it represents is a quantity sufficient to kill 25 million people.  Of course, we read every day about someone who has taken fentanyl and has died as a result.  It is a huge and current problem in our community and around the country.

The defendant allegedly marketed the defendant company's chemical products online, creating and registering websites on which the sale of precursor chemicals for fentanyl and methamphetamine were offered.  The government has proffered

1  that members of the conspiracy offered to describe these
2  chemicals — sorry, offered to disguise these chemicals as dog
3  food or nuts or motor oil.
4         The defendant is alleged to have personally negotiated
5  the sale of fentanyl precursor chemicals with DEA informants
6  and to have met with the DEA informant in Bangkok to discuss
7  the sale of these chemicals.  The government further alleges
8  that the defendant participated in recorded video calls during
9  which the sale of hundreds of kilograms of precursor chemicals
10 was discussed.  On June 8, 2023, the defendant and an alleged
11 coconspirator traveled to Fiji to meet with a DEA informant and
12 to finalize the terms of a sale of tons of these precursor
13 chemicals.  The defendant was arrested in Fiji and, as I've
14 said, transported to Hawaii by DEA agents.
15        The government has proffered that the defendant's role
16 in these meetings was much more than as a translator.  She
17 allegedly demonstrated an understanding of the defendant
18 company's chemical offerings and its logistical capabilities.
19 In particular, she demonstrated a familiarity with the Chemical
20 Abstract Service, or CAS, Registry numbers for a fentanyl
21 precursor chemical.  Indeed, the government has submitted a
22 photograph of her displaying a slip of paper showing this
23 information.
24        Because of the charges against the defendant, as I've
25 said, there is a presumption under the law that there is no

condition or combination of conditions that will reasonably ensure the defendant's return to court and the safety of the community.

As to the weight of the evidence, as to this defendant, it appears to me to be strong. The government's June 28 and July 7, 2023, submissions indicate that the defendant participated in a number of recorded video calls and meetings at which the sale of these chemicals was openly discussed. She also allegedly had a primary role in creating and registering the defendant company's websites on which the precursor chemicals were offered for sale.

The defense has argued that the government has been inconsistent in the charging documents and in statements made in an earlier bail hearing as to whether the defendant conspired to distribute fentanyl or fentanyl analogues. Defendant's Supplemental Letter, Dkt. No. 19, at pages 1-2.

But the law prohibits conspiring to manufacture, distribute, and possess with intent to manufacture and distribute both fentanyl and fentanyl analogues. 21 United States Code, Sections 813(a). ("A controlled substance analogue shall, to the extent intended for human consumption, be treated for the purposes of any federal law as a controlled substance in Schedule I"). Also, 841(b)(1)(A)(vi) prohibits trafficking involving "400 grams or more of a mixture or substance containing a detectable amount of [fentanyl] or

100 grams or more of a mixture or substance containing a detectable amount of any analogue of [fentanyl]").

Given the meetings and video calls in which the defendant participated, I conclude that the evidence against her is strong.

As to the defendant's personal history and characteristics, she is a 31-year-old citizen of China where she was born and raised and has lived most of her life with her parents. She's never lived in the United States and has no relatives in the United States. She has no ties whatsoever with this country. She says that she's employed by a software company in China. She also has worked in Italy and obtained a master's degree in communications there in 2017. To our knowledge, the defendant has no criminal history. There is likewise no evidence of substance abuse.

The Pretrial Services Office recommends that the defendant be detained both on grounds of risk of flight and danger to the community. Pretrial Services report at 4.

While Mr. Kirton has pointed out that the Pretrial Services officer mistakenly listed as one of the charges against the defendant a count in which she's not named, I don't think that count and the fact that she's not charged in it changes the picture very much with respect to the defendant. I conclude that the presumption has not been rebutted here and that the government has met its burden both as to danger and to

risk of flight.

As to danger, the defendant is alleged to have participated in a large international conspiracy to import huge quantities of precursor chemicals for fentanyl analogues into the United States.  The proposed bail package does little to ensure that she will not continue to engage in these alleged illegal activities.  There is no effective way to monitor the defendant's usage of the Internet if she's released on bail.  The government has pointed out that the defendant used encrypted means of communication in committing the alleged offenses and that cryptocurrency was used, allegedly, by a codefendant.

As to risk of flight, the defendant faces a mandatory sentence of ten years' imprisonment if she's convicted.  As I've noted, she has no ties whatsoever with the United States.  She has traveled worldwide.  She is a citizen of China.  And given that the U.S. has no extradition agreement with China, there would be no way to obtain custody over the defendant if she were to flee to China.  Given the potential sentence the defendant faces, the nature of the offense against her, her strong family ties with China, her lack of any ties to the United States, and the fact that the United States has no extradition treaty with China, the defendant has a compelling motive to flee there.

I conclude that the proposed bail conditions –– in

1   particular, a personal recognizance bond, the security that has
2   been proffered, home confinement, GPS monitoring — are not
3   sufficient to address either the risk of danger to the
4   community or the risk of flight.  These conditions would not
5   prevent the defendant from engaging in drug trafficking
6   activities given the sophisticated technology she has used in
7   the past, including encrypted communication applications, and
8   the evidence proffered by the government that other members of
9   the conspiracy remain at large.
10            While electronic monitoring would reveal that the
11  defendant had absconded if she chose to flee, given her ties to
12  China and her lack of ties to the United States, I have a
13  serious concern that if she were released, she would not return
14  to court but instead would flee to a country with which she has
15  close ties and with which this country has no extradition
16  agreement.
17            Having considered all the circumstances, I do not
18  believe the security that has been proffered is sufficient to
19  ensure the defendant's return to court.
20            Having considered all the factors set forth in the
21  Bail Reform Act, I conclude that the government has shown by a
22  preponderance of the evidence that there is no condition or
23  combination of conditions that will reasonably ensure the
24  defendant's return to court and that the government has shown
25  by clear and convincing evidence that there is no condition or

N7KHCheC

1  combination of conditions that will ensure the safety of the
2  community if she is released.  Accordingly, the defendant will
3  be detained pending trial.
4          Is there anything else on behalf of the government?
5          MR. SULLIVAN:  Nothing, your Honor.  Thank you.
6          THE COURT:  Anything else on behalf of the defendant?
7          MR. KIRTON:  No, your Honor.  Thank you.
8          THE COURT:  All right.  Thank you.  We are adjourned.
9          (Adjourned)