

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

---

*The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278*

December 20, 2024

**By ECF**
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York  10007

      Re:    *United States v. Wang, et al.*, 23 Cr. 302 (PGG)

Dear Judge Gardephe:

      The Government respectfully submits this letter motion *in limine* to preclude defendants Qingzhou Wang, a/k/a "Bruce," and Yiyi Chen, a/k/a "Chiron," from presenting an entrapment defense at trial unless and until they proffer evidence to the Court that they are capable of supporting such a defense.  On December 16, 2024, Chen filed her requests to charge, which included a proposed instruction on the affirmative defense of entrapment.  (Dkt No. 96 ("Chen RTC") at 6-8).  According to the proposed instruction, "Ms. Chen asserts as an affirmative defense that she was entrapment [*sic*] by Confidential sources of the DEA" and that "Ms. Chen maintains that she was the victim of Entrapment in connection with the 2023 undercover operation and that her only involvement in the charged conspiracy was in connection with that operation."  (Chen RTC at 6).  Wang has not indicated whether he also intends to pursue an entrapment defense.  As set forth below, because neither Chen nor Wang can meet his or her burden to show that he or she was induced to commit the charged crimes, and because both defendants were predisposed to commit their crimes, the defendants cannot establish an entrapment defense and should therefore be precluded from offering or arguing such a defense at trial, including in the opening statements of their respective counsel to the jury.

      A.   **Applicable Law**

      "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988).  A defendant hoping to assert the entrapment defense "has the burden to produce some credible evidence . . . that the government induced him to commit the crime." *United States v. Cabrera*, 13 F.4th 140, 147 (2d Cir. 2021) (internal quotation marks omitted); *United States v. Kopstein*, 759 F.3d 168, 173 (2d Cir. 2014) ("The defendant bears the burden of presenting credible evidence of government inducement.").  "While stealth and strategy are necessary weapons in the arsenal of the police officer, and artifice and stratagem may be employed to catch those engaged in criminal enterprises, that the government employed either does not necessarily mean that it was the government that initiated the crime." *United States v. Brand*, 467 F.3d 179, 190 (2d Cir. 2006) (internal citations and quotation marks

omitted), *abrogated on other grounds by Cabrera*, 13 F.4th 140 (2d Cir. 2021). If a defendant establishes inducement, "[t]he burden then shifts to the government to show that the defendant was predisposed to commit the crime beyond a reasonable doubt." *United States v. Gagliardi*, 506 F.3d 140, 149 (2d Cir. 2007).

"A defendant is predisposed to commit a crime if he is ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so." *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (internal quotation marks omitted). The Government may show that a defendant was predisposed to commit the crime charged by demonstrating: "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *Id.* (quoting *United States v. Valencia*, 645 F.2d 1158, 1167 (2d Cir. 1980)); *see also United States v. Al-Moayad*, 545 F.3d 139, 154 (2d Cir. 2008) (same).

### B. Discussion

Because Chen and Wang cannot show that they were induced to commit their crimes, and because they were predisposed to commit those crimes, they fail at both prongs and cannot establish an entrapment defense.

*First*, the evidence shows that neither Chen nor Wang was induced by the DEA Confidential Sources.[1] The defendants and their co-conspirators advertised their precursor chemical business, Amarvel Biotech, long before CS-1 began negotiating with Amarvel Biotech in November 2022; indeed, Chen registered Amarvel Biotech's web domain in April 2022, and in August 2022, received multiple disapprovals from Google for advertisements that implicated fentanyl.[2] Put simply, the DEA contacted the conspirators because they were *already* selling precursors. Moreover, the first conspirator to engage with the DEA was not Chen or Wang but rather their co-defendant FNU LNU, a/k/a "Er Yang," a/k/a "Anita" ("Yang"), the sales representative acting on behalf of Amarvel Biotech. And it was in the course of those initial dealings that Yang told CS-1 that Amarvel Biotech could ship precursor chemicals directly to New York and confirmed that the chemicals could be used to make fentanyl. (Indictment ¶ 16). For example, on or about December 1, 2022, Yang told CS-1 that he would be "happy with our product" and that CS-1 would "be able to synthesize fentanyl." (Indictment ¶ 16). During the negotiations regarding this fentanyl precursor purchase, Yang also repeatedly referenced the involvement of her "boss," whom Yang later identified as Wang. (Indictment ¶ 18). And it was

---

[1] The Government incorporates by reference herein the "Factual Background" section of its memorandum of law in support of its opening motions in *limine* filed on December 13, 2024 ("Government's Memorandum"). (Dkt. No. 92). Terms not otherwise defined here shall have the meaning ascribed to them in the Government's Memorandum.

[2] For example, on or about August 4, 2022, Chen received an email from "Google Ads Policy [M]anager" indicating "Disapproved," and "Certificate required: Prescription Opioid Painkillers," and "Destination: FENTANYL."

U.S. v. Wang, et al., 23 Cr. 302 (PGG)                                                                 Page 3
Hon. Paul G. Gardephe
December 20, 2024

Yang who ultimately introduced CS-1 and CS-2 to Wang and Chen after the January 2023 delivery of fentanyl and methamphetamine precursors to New York and in the lead-up to the March 2023 meeting in Bangkok, Thailand between CS-2 and Wang and Chen.  Yang's role precludes any claim of inducement by Chen or Wang because a defendant cannot claim entrapment where they were, as here, introduced to confidential sources or undercover agents through a co-conspirator: "Where a government agent induces a middleman to commit a crime, and the middleman takes it upon himself to induce another person to participate in the crime, the latter person is not entitled to a derivative entrapment charge." *United States v. Williams*, 453 F. App'x 74, 79 n.1 (2d Cir. 2011) (internal quotation marks and ellipses omitted).  In other words, even assuming Yang, as the effective "middle" person, had in fact been induced by CS-1 (which she was not), Yang's introduction of Wang and Chen defeats their claim of inducement as a matter of law.  And although CS-1 and CS-2 paid money to Yang, Wang, and Chen and further discussed additional pricing and payments in connection with the purchase of precursor chemicals to manufacture fentanyl, a promise of monetary compensation for participation in a transaction for the purposes of manufacturing fentanyl—"the typical benefit of participating in this type of criminal enterprise"—is "a form of reward that is not sufficient, by itself, to establish inducement." *United States v. McKinley*, 70 F.3d 1307, 1312, 1314 (D.C. Cir. 1995) (citing *United States v. Ellis*, 23 F.3d 1268, 1273 (7th Cir. 1994) ("'If the ordinary profits of crime as offered by the government agent are what induced the defendant to commit the crime, that defendant has not been entrapped.'")).[3]  Nor did any of the Confidential Sources here coerce, threaten, or intimidate the defendants into engaging in the transactions and dealings that form the basis of the charged crimes.  Thus, on several bases, the defendants cannot establish inducement, and any potential entrapment defense fails for this reason, standing alone.

*Second*, even if they were induced (and they were not), Chen and Wang were indisputably predisposed to commit the charged crimes because they were "ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so." *Salerno*, 66 F.3d at 547 (internal quotation marks omitted).  As detailed in the Government's Memorandum, during the meeting in Bangkok, Chen and Wang discussed with CS-2 their existing precursor chemical business, including the fact that they have "a lot of customers in America and Mexico" who know the formula for and how to produce fentanyl.  (*See* Gov't Mem. at 4-5).  These admissions are consistent with the conspirators' Internet advertisements for fentanyl precursors and Chen's violation notices from Google for fentanyl-related advertising.  Thus, it is no surprise that the subsequent April 10, 2023 video call between Wang, Chen, and CS-2, neither Wang nor Chen expressed any unease with supplying CS-2 with approximately 200 kilograms of precursor chemicals for delivery to New York, in order to make 50 to 55 kilograms of fentanyl (which CS-

---

[3] *Accord United States v. Glover*, 153 F.3d 749, 754-55 (D.C. Cir. 1998) (holding minimal evidence of reluctance and no evidence of "'persuasive overtures' that go beyond those ordinarily present in a drug transaction" to be insufficient to merit an entrapment instruction); *United States v. Young*, 78 F.3d 758, 761-62 (1st Cir. 1996) (finding no inducement where there was no evidence of "coercion, intimidation or any promise of benefits other than the opportunity to commit the crime"); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1004 (10th Cir. 1992) (finding no inducement where "the government informer did no more than advertise [an agent's] interest in purchasing cocaine" and setting up the controlled buy).

U.S. v. Wang, et al., 23 Cr. 302 (PGG)                                              Page 4
Hon. Paul G. Gardephe
December 20, 2024

2 described as the "final product"). (*See* Indictment ¶ 28). When Chen told Wang, in Mandarin, that CS-2 "said he wants to produce the final product weighing 50-55 kilograms and will provide us with a form specifying the raw materials he wants," Wang replied, in Mandarin, "No problem." Nor is it surprising that, when presented with the opportunity to provide hundreds of kilograms of such precursor chemicals for the manufacture of fentanyl in the United States, the defendants enthusiastically agreed to and delivered on such a deal—circulating the purchase order to the Confidential Sources the next day and shipping precursor chemicals later that month.[4] *See United States v. Cromitie*, 727 F.3d 194, 206 (2d Cir. 2013) ("[T]he Supreme Court has stated that if the defendant 'had promptly availed himself of the criminal opportunity' presented by government agents, 'it is unlikely that his entrapment defense would have warranted a jury instruction.'" (quoting *Jacobson v. United States*, 503 U.S. 550, 548 (1992))); *see also United States v. Yang Chia Tien*, 638 F. App'x 19 (2d Cir. 2015) ("A defendant's ready response to a government agent's proposition may show the defendant's predisposition, even where the government agent, rather than the defendant, first broaches the subject of the illegal scheme.").

Without a factual basis from which to argue entrapment, any attempt by Chen or Wang to present or otherwise reference this defense at trial (for example, during opening statements or cross-examination) would confuse and mislead the jury and unfairly prejudice the Government. The Court should therefore preclude the defendants from making any arguments, explicitly or implicitly, sounding in entrapment, unless and until they proffer evidence to support such a defense. *See United States v. Hurtado*, 47 F.3d 577, 585 (2d Cir. 1995) ("If the government . . . presents uncontradicted proof of predisposition, the entrapment defense is precluded as a matter of law." (citing *United States v. Dunn*, 779 F.2d 157, 159 (2d Cir. 1985))); *United States v. Mayo*, 705 F.2d 62, 70 (2d Cir. 1983) ("[T]he entrapment defense will not go to the jury in the face of substantial evidence of propensity unless the defendant produces some evidence to contradict directly the prosecution's showing . . . where the government has established a track record of criminal activity on the part of the accused that matches the conduct for which he is charged, he is not entitled to have the entrapment defense go to the jury upon the mere showing that he was initially reluctant to commit the crime.").

Absent a sufficient factual proffer, Chen or Wang should be precluded from advancing an entrapment defense at trial. At a minimum, if they are permitted to present such a defense (for example, during opening statements) but the evidence at trial proves insufficient to support an entrapment charge, the Government anticipates that it will respectfully request that the Court instruct the jury that entrapment is not a defense in this case with the following curative instruction:

> There has been some mention in this trial about entrapment. Entrapment is a complicated legal doctrine, but it has nothing at all to do with this case. I am instructing you as a matter of law that

(continued on next page)

---

[4] *See* Indictment ¶¶ 28-30.

U.S. v. Wang, et al., 23 Cr. 302 (PGG)                                                                                          Page 5
Hon. Paul G. Gardephe
December 20, 2024

        entrapment is not a defense in this case and you are not permitted to consider it during your deliberations.

See Hon. Paul A. Crotty, United States v. McDarrah, No. 05 Cr. 1182 (PAC) (S.D.N.Y. Dec. 19, 2006) (jury charge).

        Respectfully submitted,

        EDWARD Y. KIM
        Acting United States Attorney for the
        Southern District of New York

By:     /s/
        Alexander Li
        Kevin Sullivan
        Assistant United States Attorneys
        (212) 637-2265 / -1587

cc:     All Counsel (via ECF)