

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 19, 2025

**BY ECF**
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re:  <u>United States</u> v. <u>Qingzhou Wang</u> and <u>Yiyi Chen</u>, S1 23 Cr. 302 (PGG)

Dear Judge Gardephe:

  The Government writes in response to defendant Qingzhou Wang's motion asking the Court to "reconsider its previous ruling and allow the defense to explore, through cross-examination, whether Amarvel in fact dealt with other, non-precursor chemicals." ("Mot.," Dkt. 119 at 2). Wang claims that a testifying Drug Enforcement Administration confidential source ("CS-2") conveyed a "factually inaccurate statement" when CS-2 testified — without objection — that CS-2 understood defendant Yiyi Chen's reference to "seven tons to America" at the March 2023 meeting in Bangkok to be fentanyl precursor chemicals. (Mot. at 1–2). Because CS-2 testified as to his own understanding of Chen's statement, which understanding is supported by the evidence, there is no "factually inaccurate" information to correct. And in any event, Wang is free to test the basis for CS-2's understanding through cross-examination, including by questioning whether the defendants specifically stated that all seven tons they sent to the United States in March 2023 were fentanyl precursors.

  Permitting Wang to offer evidence of "other, non-precursor chemicals," however, is unwarranted by the challenged testimony and inconsistent with the prior rulings of the Court. As the Court observed, "[a]s a general matter, evidence that a defendant engaged in lawful conduct during a time period in which the government contends that he committed a crime is not relevant." (Transcript of January 8, 2025 Final Pretrial Conference ("FPTC Tr.") at 10). CS-2's testimony describing his own understanding of Chen's statement does not alter this analysis. Wang's proposal to introduce evidence of "myriad chemicals, not only the ones subject of the current trial," (Mot. at 1), would therefore not only be irrelevant, as the Court has already determined, but also confusing to the jury. It would also be unfairly prejudicial to allow the defendants to suggest that they were engaged in the sale of "myriad" legal products, unless the Government were then permitted to counter that misimpression by presenting evidence of additional precursor chemicals sold by the defendants to make drugs other than fentanyl, fentanyl-related substances, and methamphetamine (*e.g.*, precursors for MDMA or GHB), which evidence the Court has largely precluded. For these reasons, the Court should not revisit its prior decision, and Wang's motion for reconsideration should be denied.

## **Background**

In its rulings on the parties' motions *in limine*, the Court precluded the defense from offering "evidence or argument regarding the defendants' sale of chemicals other than those used to create fentanyl, a fentanyl-related substance, and methamphetamine," (FPTC Tr. 13), because such evidence is "irrelevant to whether the crimes alleged in the indictment took place," (FPTC Tr. 11), and "is likewise not relevant to any proposed entrapment defense because the fact that the defendants sold chemicals that are not used to create fentanyl, a fentanyl-related substance, and methamphetamine does not shed light on whether they were predisposed to sell chemicals that are used to create these controlled substances," (FPTC Tr. 13). On Wang's motion, the Court also ordered the Government to redact references in a chart sent by co-conspirator FNU LNU, a/k/a "Er Yang," a/k/a "Anita," to MDMA and its precursor chemicals, because, among other reasons, "the reference to MDMA and its precursors . . . if admitted, would be a reference to uncharged criminal conduct." (Trial Tr. 43; *see also* Trial Tr. 58–59 (directing the Government to either "lay the groundwork for the admission of uncharged conduct" or "redact[] in the same fashion that I directed that the chart that has been raised as an issue be redacted")).

In compliance with the Court's ruling on uncharged criminal conduct — which, again, the Court issued on Wang's motion — the Government redacted and shortened numerous exhibits, including by removing the defendants' statements at the Bangkok meeting describing their shipments of other drug precursors. For example, before the Court's ruling, the Government had included in its marked exhibits the attached excerpt from the meeting in Bangkok. (Ex. A). In this excerpt, which immediately precedes the exchange in evidence as Government Exhibits 502G and 502G-T, Wang boasted, in Mandarin, that the defendants' "main product" in "Australia" was "BDO" and that the Australians "used to ask for GBL." (Ex. A at 2). BDO (*i.e.*, 1,4-Butanediol) and GBL (*i.e.*, gamma-butyrolactone) convert after oral administration into gamma-hydroxybutyric acid ("GHB"), popularly referred to as a "date rape drug."[1] As CS-2 interjected "[f]or the MDMA?," Chen explained in English that because "GBL" was "illegal in China," the defendants sold BDO in Australia as it was "similar to the GBL." (Ex. A at 2–3). Wang added in Mandarin that "in Europe, they want PMK," and Chen repeated that statement to CS-2 in English. (Ex. A at 3). As the Court has noted, PMK glycidate is a precursor to MDMA, commonly known as ecstasy.[2] (Tr. 35). Following the Court's ruling on uncharged criminal conduct, the Government removed this exchange from Government Exhibits 502G and 502G-T.

---

[1] Drug Enforcement Administration, Diversion Control Division, "1,4-Butanediol" (Feb. 2024), *available at* https://www.deadiversion.usdoj.gov/drug_chem_info/bdo.pdf; *see also Shaoming* Jin, Xiao Ning, Jin Cao, Yaonan Wang, "Simultaneous Quantification of γ-Hydroxybutyrate, γ-Butyrolactone, and 1,4-Butanediol in Four Kinds of Beverages," Int'l J. of Analytical Chem. (July 15, 2020), *available at* https://onlinelibrary.wiley.com/doi/epdf/10.1155/2020/8837743 ("γ-Butyrolactone (GBL) and 1,4-butanediol (1,4-BD) are two GHB precursors.").

[2] The Court permitted the Government to introduce Government Exhibit 711, which is an advertisement found on Chen's laptop that appears to "offer[] to package PMK glycidate as a food product." (Trial Tr. 35).

U.S. v. Qingzhou Wang and Yiyi Chen, S1 23 Cr. 302 (PGG)                                             Page 3
Hon. Paul G. Gardephe
January 19, 2025

      At trial on January 17, 2025, the Government published Government Exhibit 502M and 502M-T, which is another clip from the meeting in Bangkok. (Trial Tr. 498). In this clip, Wang told Chen, in Mandarin, that "[i]n this month, from March until now, we've shipped 7 tons" to the United States and Canada; Chen then told CS-2, in English, that "[a]s far this month, uh, we ship already 7 tons to America." (GX 502M-T at 4). Wang explained, in Mandarin, that this quantity was first "shipped to the United States" and then a portion was "transferred to Canada." (GX 502M-T at 4). Chen then told CS-2, in English, "some part of products transferred to Canada" and to "Mexico." (GX 502M-T at 4–5).[3] Wang went on to tell Chen, in Mandarin, that "[t]he security to the US is still top notch; perhaps 1 out of 1000 orders might be detained." (GX 502M-T at 9). Chen then told CS-2, in English: "You can add 3 tons or 5 tons, it's not a problem because to America it's quite safe. We have a good line, special line to America, and very stable. The successful rate: maybe 1,000 times, the customs will have one time problem." (GX 502M-T at 9). CS-2 testified that he understood the "seven tons" referenced in the discussion to be "[s]even ton of chemicals" like "[t]he ones that I was requesting," that is, "chemicals to make fentanyl." (Trial Tr. 499).

### CS-2's Testimony Is Not "Factually Inaccurate" and the Introduction of "Myriad Chemicals" is Unwarranted

      Wang argues that CS-2's understanding of the "seven tons" as fentanyl precursors — an answer to which Wang did not object — is "factually inaccurate." (Mot. at 2). To have given a "factually inaccurate" answer to a question about his *own* understanding, CS-2 would have had to lie on the stand about his understanding, and there is no evidence whatsoever that CS-2 did that. Indeed, CS-2's understanding is entirely consistent with Chen's English-language statements during the conversation. Chen explicitly told CS-2 that the defendants had a "special line to America" such that even if CS-2 added "3 tons or 5 tons," there would be no problem because "maybe 1,000 times, the customs will have one time problem." (GX 502M-T at 9). The clear implication of this statement is that the defendants' ongoing shipments to the United States — including the seven tons they had already sent that month — were subject to seizure by "customs." Given that the focus of the meeting was the defendants' ability to supply fentanyl precursors to CS-2 on a long-term basis, it was entirely reasonable for CS-2 to understand Chen's reference to "seven tons" to be seven tons of illicit fentanyl precursors. There is nothing "factually inaccurate" about CS-2's description of his understanding.

      Of course, to the extent that Wang believes CS-2 misunderstood the conversation in Bangkok, Wang is free to explore the basis of CS-2's understanding on cross-examination. For example, Wang could ask CS-2 whether Chen explicitly stated at the meeting that all seven tons they shipped to the United States were fentanyl precursors and otherwise probe CS-2's testimony and understanding. But nothing about CS-2's understanding of Chen's statement transforms the Indictment into a charge of "ceaseless criminal conduct." (Mot. at 2 (quoting *United States v. Damti*, 109 F. App'x 454, 456 (2d Cir. 2004)). The Government has not alleged, and will not argue, that every shipment the defendants handled at Amarvel Biotech was illegal. Rather, the

---

[3] Earlier in the Bangkok meeting, Chen told CS-2 that the defendants had customers in Mexico who made fentanyl. (*See, e.g.*, GX 502C-T, 502G-T).

*U.S. v. Qingzhou Wang and Yiyi Chen*, S1 23 Cr. 302 (PGG)  Page 4
Hon. Paul G. Gardephe
January 19, 2025

Government has alleged, and will prove, that the defendants engaged in the charged narcotics, listed chemicals, and money laundering crimes.

      At bottom, nothing about CS-2's testimony changes the Court's prior determination: Wang should not be permitted to inject evidence of the defendants' purported sales of "myriad chemicals" unrelated to the case, (Mot. at 1), because such evidence is simply "irrelevant to whether the crimes alleged in the indictment took place," (FPTC Tr. 11). Even if such evidence had some marginal probative value, it would be substantially outweighed by the risks of unfair prejudice, misleading the jury, and confusing the jury, in part because the Government has, in accordance with the Court's ruling on Wang's motion *in limine*, refrained from offering evidence about the defendants' shipments of precursors for other drugs. Permitting the defense to suggest they shipped "myriad" purportedly legal chemicals, while precluding the Government from offering evidence that they sold chemicals to make drugs like MDMA and GHB, would present an inaccurate and incomplete picture to the jury. And as a practical matter, were the defense to cross-examine CS-2 about what other chemicals the defendants claimed to be selling, it is difficult to see how CS-2 could answer truthfully without referencing other drug precursors (such as those described by the defendants in Exhibit A).[4]

## Conclusion

For the foregoing reasons, Wang's motion to reconsider should be denied.

      Respectfully submitted,

      EDWARD Y. KIM
      Acting United States Attorney

By:   /s/
      Alexander Li / Kevin Sullivan
      Assistant United States Attorneys
      (212) 637-2265 / -1587

cc:    All counsel of record (*by ECF*)

Attachments:

    Ex. A (Excerpt of March 23, 2023 meeting transcript immediately preceding GX 502G-T)
    GX 502M-T

---

[4] To effect compliance with the Court's ruling, the Government has instructed CS-2 to refrain from discussing, in both direct and cross-examination, precursors for drugs other than fentanyl and methamphetamine, unless directed by the Court.