UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- against -

QINGZHOU WANG, a/k/a "Bruce," and
YIYI CHEN, a/k/a "Chiron,"

Defendants.

S1 23 Cr. 302 (PGG)

**JURY INSTRUCTIONS**

January 29, 2025

I.    GENERAL INSTRUCTIONS ........................................................................................... 1

1.    Introduction ............................................................................................................... 1

2.    Role of the Court ....................................................................................................... 1

3.    Role of the Jury ......................................................................................................... 2

4.    Role of Counsel ......................................................................................................... 2

5.    Sympathy or Bias ...................................................................................................... 2

6.    All Persons Equal Before the Law ............................................................................ 4

7.    Presumption of Innocence; the Government's Burden of Proof; and the Reasonable
      Doubt Standard .......................................................................................................... 4

8.    What Is and Is Not Evidence ..................................................................................... 6

9.    Direct and Circumstantial Evidence .......................................................................... 7

10.   Questions by the Court ............................................................................................... 9

11.   Specific Investigative Techniques .............................................................................. 9

12.   Use of Law Enforcement Informants .......................................................................... 9

13.   Use of Evidence Obtained Pursuant to Searches ...................................................... 10

14.   Use of Evidence Obtained at Time of Arrest ............................................................. 10

15.   Use of Recordings and Transcripts ............................................................................ 10

16.   Redactions .................................................................................................................. 11

17.   Witness Credibility ..................................................................................................... 11

18.   Prior Inconsistent Statements ..................................................................................... 13

19.   Witness Bias ............................................................................................................... 14

20.   Law Enforcement Witnesses ....................................................................................... 14

21.   Opinion Testimony ..................................................................................................... 15

22.   Improper Considerations:  Race, Religion, National Origin, Sex, or Age .................. 15

23.   Persons Not on Trial ................................................................................................... 15

24.   Uncalled Witnesses .................................................................................................... 16

25.   Defendant's Right Not to Testify ................................................................................ 16

26.   Preparation of Witnesses ............................................................................................ 16

27.   Variation in Dates ....................................................................................................... 17

28.   Stipulations ................................................................................................................. 17

29.   Illustrative Aids .......................................................................................................... 17

30.   Multiple Counts – Multiple Defendants ..................................................................... 18

II.    INSTRUCTIONS AS TO SPECIFIC CHARGES ............................................................ 18

1.    Significance of the Indictment ..................................................................... 18

2.    Charges in the Indictment ........................................................................... 19

  a.    Count One ................................................................................... 19

  b.    Count Two ................................................................................... 19

  c.    Count Three ................................................................................. 21

  d.    Count Four ................................................................................... 21

  e.    Count Five .................................................................................... 22

3.    Count One – Fentanyl and Ortho-Methylfentanyl Conspiracy ..................................... 23

  a.    Introduction .................................................................................. 23

  b.    Fentanyl and Ortho-Methylfentanyl Conspiracy - Elements ................... 24

    i.    First Element – Existence of a Conspiracy ................................... 24

    ii.    First Element – Part One:  The Unlawful Agreement .................. 25

    iii.    First Element – Part Two:  Object of the Conspiracy ................ 27

      1.    First Element – Drug Type ................................. 29

    iv.    Second Element – Membership in a Conspiracy ......................... 31

      1.    Membership in a Conspiracy – Knowledge of the
           Controlled Substance ........................................ 31

      2.    Membership in a Conspiracy – Proof of Knowledge and
           Intent ............................................................ 32

      3.    Membership in a Conspiracy – Time Period ................... 34

  c.    Count One – Venue ...................................................................... 35

  d.    Count One – Drug Type and Quantity ........................................... 36

    i.    Drug Type ................................................................................. 36

    ii.    Drug Quantity ......................................................................... 37

    iii.    Quantity Determination as to Each Defendant ........................... 38

  e.    Count One – Fentanyl Analogue ................................................... 38

4.    Count Two – Conspiracy to Import 1-boc-4-AP ................................................... 39

  a.    Count Two – Object of the Conspiracy ........................................... 40

  b.    Count Two – Chemical Type ......................................................... 41

    i.    Count Two – Knowledge of the Listed Chemical ....................... 41

c.      Count Two – Time Period.........................................................42

d.      Count Two – Intent to Manufacture Fentanyl.........................42

5.  Counts Three & Four – Importation of Listed Chemicals ...........................43

a.      Counts Three & Four – Elements .............................................44

b.      Counts Three & Four – Aiding and Abetting ...........................46

c.      Count Three – Intent to Manufacture Fentanyl........................48

6.  Count Five – Conspiracy to Commit Money Laundering ............................48

a.      Count Five – Object of the Conspiracy....................................49

i.      Count Five – Elements of Money Laundering.............49

b.      Count Five – Time Period.........................................................50

7.  Conscious Avoidance.....................................................................................51

III.  FINAL INSTRUCTIONS CONCERNING PROCEDURE ..................................52

1.  Right to See Exhibits and Request Testimony; Communications with the Court ........52

2.  Duty to Deliberate; Unanimous Verdict ......................................................53

3.  Juror Notes ...................................................................................................55

4.  Verdict...........................................................................................................55

5.  Duties of Foreperson.....................................................................................55

6.  Return of Verdict ..........................................................................................55

7.  Rules of Conduct...........................................................................................56

8.  Conclusion ...................................................................................................56

## I.    <u>GENERAL INSTRUCTIONS</u>

1.    <u>Introduction</u>

Members of the jury, I will now instruct you as to the law that governs this case. You have been handed a copy of the instructions I will read.  Please read along with me.  You will be able to take your copy of the instructions into the jury room and to consult them during your deliberations.

There are three parts to these instructions.  I'll begin with general instructions about your role, and about how you are to decide the facts of the case, <u>i.e.</u>, what happened.  I will then give you instructions that are specific to the charges in this case.  I will close with instructions about such matters as communications with the Court, conduct during deliberations, and the process for returning a verdict.

It is important that you listen carefully.  I am reading these instructions from a prepared text because the law is made up of words that are very carefully chosen.  This is not a time to <u>ad lib</u>.  When I tell you what the law is, it is critical that I use exactly the right words.

2.    <u>Role of the Court</u>

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any lawyer has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.  You must not substitute your own notions or opinions of what the law is or what it ought to be.

1

3.    <u>Role of the Jury</u>

As members of the jury, you are the sole and exclusive judges of the facts. You decide what happened. It is your sworn duty to determine the facts based solely on the evidence received in this trial. Any opinion I might have regarding the facts is of absolutely no consequence.

4.    <u>Role of Counsel</u>

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed an opinion of any kind as to any of the lawyers in this case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations at all.

The lawyers and I have had conferences at the bench and other conferences out of your hearing. These conferences involved procedural or evidentiary matters that are the responsibility of the judge and should not enter into your deliberations at all.

A lawyer has a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. It is my responsibility to rule on those objections. Why an objection was made or how I ruled on it is not your concern. You should not draw any inference simply from the fact that a lawyer objects to a question, or that I sustained or overruled an objection.

5.    <u>Sympathy or Bias</u>

You must evaluate the evidence calmly and objectively, without prejudice or sympathy. You must be completely fair and impartial. Your verdict must be based solely on the evidence introduced at this trial, or the lack of evidence. Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. Under

2

your oath as jurors you are not to be swayed by sympathy or prejudice. You are to be guided solely by the evidence in this case, and the crucial, bottom-line question that you must ask yourselves as you consider the charges against Mr. Wang and Ms. Chen is: has the Government proven each element of these charges beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendant you are considering is guilty of the crime charged, and you are to do so solely on the basis of the evidence, and subject to the law as I explain it to you. If you let fear or prejudice, or bias or sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to a defendant's guilt on a particular charge, you should not hesitate for any reason to reach a verdict of not guilty as to that charge. On the other hand, if you should find that the Government has met its burden of proving beyond a reasonable doubt that a defendant is guilty of a particular charge, you should not hesitate because of sympathy or any other reason to reach a verdict of guilty as to that charge.

The question of possible punishment must not enter into or influence your deliberations in any way. The duty of imposing a sentence rests exclusively on me.

Your function is to weigh the evidence in the case and to determine whether or not the Government has proven a defendant's guilt beyond a reasonable doubt, solely on the basis of such evidence or lack of evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed on a defendant — in the event of a finding of guilt — to influence your verdict in any way, or, in any sense, to enter into your deliberations. Similarly, you cannot permit any feelings you might have about the nature of the crime charged

to interfere with your decision-making process.  Your verdict must be based exclusively on the evidence or the lack of evidence in this case.

6.    All Persons Equal Before the Law

In reaching your verdict, you must keep in mind that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party and that the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party.  By the same token, you must give the Government and its witnesses no less consideration.

In reaching your decision as to whether the Government sustained its burden of proof, you may not consider any personal feelings you may have about either defendant's race, religion, ethnicity, national origin, sex, or age.  All persons charged with a crime are entitled to the same presumption of innocence.

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence. Both sides are entitled to a trial free of prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of all the evidence.

7.    Presumption of Innocence; the Government's Burden of Proof; and the Reasonable Doubt Standard

Mr. Wang and Ms. Chen have each pleaded not guilty.  In doing so, each defendant has denied the charges in the Indictment.  As a result, the Government has the burden of proving the charges against them beyond a reasonable doubt.  This burden of proof never shifts to a defendant, because the law never imposes on a defendant in a criminal case the burden or duty of testifying, of calling any witness, or of locating or producing any evidence.

4

A defendant does not have to prove his or her innocence. To the contrary, a defendant is presumed innocent until such time, if ever, that you as a jury are satisfied that the Government has proven him or her guilty beyond a reasonable doubt.

Mr. Wang and Ms. Chen began the trial with a clean slate, and this presumption of innocence alone is sufficient for you to acquit each defendant, unless you as jurors are unanimously convinced beyond a reasonable doubt of his or her guilt, after a careful and impartial consideration of all of the evidence. If the Government fails to sustain its burden as to a particular defendant, you must find that defendant not guilty.

What is reasonable doubt? It is a doubt founded in reason, as opposed to a doubt based on speculation, emotion, sympathy, or prejudice. It is a doubt that arises out of the evidence, or the lack of evidence. It is doubt that a reasonable person has after carefully weighing all the evidence. Reasonable doubt is a doubt that arises from your own judgment, life experience, and common sense when applied to the evidence.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of the guilt of a particular defendant – that is, if you do not have an abiding conviction of his or her guilt – you must find him or her not guilty. In other words, if you have such a doubt as would cause you, as a prudent person, to hesitate before acting in a matter of importance to yourself, then you have a reasonable doubt, and it is your duty to find that defendant not guilty.

On the other hand, if after a fair and impartial consideration of all the evidence you do have an abiding conviction of a defendant's guilt – in other words, a conviction you would be willing to act upon without hesitation in an important matter in your own life – then you have no reasonable doubt, and it is your duty to find that defendant guilty.

Reasonable doubt is not whim or speculation.  It is not an excuse to avoid the performance of an unpleasant duty.  Reasonable doubt also does not mean beyond all possible doubt.  It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that by its nature is not susceptible to mathematical certainty.  As a result, the law in a criminal case is that it is sufficient for the Government to establish the guilt of a defendant beyond a reasonable doubt, not beyond all possible doubt.

8.    <u>What Is and Is Not Evidence</u>

In determining the facts, you must rely on your own recollection of the evidence. The evidence in this case is the testimony of the witnesses, the exhibits received in evidence, and the stipulations or agreements as to certain facts entered into by the parties.  When I sustained an objection to a question, the answer that the witness may have given in response to that question is not part of the evidence in this case and may not be considered by you.  You are likewise not to consider a lawyer's questions as evidence.  It is the witnesses' answers that are evidence, not the questions.

Where I ordered that testimony be stricken from the record, you may not consider that testimony during your deliberations.

During the trial, I instructed you that certain Voice of America articles were not being received into evidence for the truth of the statements made in these articles.  Instead, these articles were admitted for you to consider in connection with determining Defendant Chen's knowledge or intent.  As to Defendant Wang, you may only consider the Voice of America articles to the extent you find that – during a recorded conversation – he alluded to a company mentioned in one of the Voice of America articles.  And even then, you can only consider this reference to the extent you find that it bears on Defendant Wang's knowledge and intent.  In

sum, where evidence was admitted for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits shown to a witness but not received in evidence are not evidence, nor are materials that were used only to refresh a witness's recollection.

As I told you at the outset of this case, arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their closing arguments is intended to help you understand the evidence to reach your verdict. However, where your recollection of the evidence differs from what a lawyer has argued, it is your recollection of the evidence that controls. You must determine the facts based solely on the evidence received in this trial. In determining the facts, you must rely on your own recollection of the evidence. What the lawyers said in opening statements, in closing arguments, in objections, or in questions is not evidence.

I remind you also that nothing I have said during the trial, or will say in instructing you on the law, is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be. The decision here is for you alone.

It is for you alone to decide what weight, if any, to give to the testimony of the various witnesses and to the exhibits that have been received in evidence.

9. <u>Direct and Circumstantial Evidence</u>

Generally, there are two types of evidence that you may consider in reaching your verdict: direct evidence and circumstantial evidence.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something seen, felt, touched, or heard. For example, if a

witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn and you cannot look outside. As you're sitting here, someone walks in with an umbrella, which is dripping wet. Then a few minutes later another person enters with a wet raincoat. Now, you can't look outside the courtroom to see whether it's raining, so you have no direct evidence of that fact. But, based on the facts that I have asked you to assume, you could conclude that it had been raining.

That's all there is to circumstantial evidence. On the basis of reason, life experience, and common sense, you infer from one established fact the existence or non-existence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. Many material facts — such as what a person was thinking or intending — are rarely easily proven by direct evidence. Often such facts are established by circumstantial evidence.

Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, whether direct or circumstantial.

There are times when different inferences may be drawn from the evidence. The Government may ask you to draw one set of inferences, while a defendant asks you to draw

another.  It is for you, and for you alone, to decide what inferences you will draw from the evidence.

What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of exhibits that party introduced, or the length of time that party spent on a particular subject.

10.    Questions by the Court

You should draw no inference or conclusion of any kind – whether favorable or unfavorable – with respect to any witness or party, by reason of any question I posed to a witness.  My questions were designed to clarify or expedite matters and were not intended to suggest any view on my part as to a witness's credibility, or as to what your decision should be. The decision here is for you alone.

11.    Specific Investigative Techniques

There is no legal requirement that the Government prove its case through any particular means.  You are not to speculate as to why the Government used the techniques it did, or why it did not use other techniques.  Law enforcement techniques are not your concern.  Your concern is to determine whether or not, based on the evidence or lack of evidence, the Government has proven a defendant's guilt beyond a reasonable doubt.

12.    Use of Law Enforcement Informants

You have heard testimony from individuals who served as informants for the Drug Enforcement Administration or "DEA."  The DEA used these informants to investigate the Defendants.

The Government may instruct such informants to conceal their true identities in connection with the investigation.  There is nothing improper or illegal with the Government

using such techniques.  Indeed, certain types of evidence would be extremely difficult to obtain without the use of informants.

Whether or not you approve or disapprove of the use of informants in law enforcement investigations is not to enter into your deliberations in any way.

13.    Use of Evidence Obtained Pursuant to Searches

You have heard evidence that law enforcement officials seized evidence during searches.  There has been no argument in this case that any of the evidence before you was unlawfully obtained, and you may properly consider all the materials that have been received in evidence.  Whether you approve or disapprove of how this evidence was obtained should not enter into your deliberations.  What weight you choose to give this evidence is entirely up to you.

14.    Use of Evidence Obtained at Time of Arrest

You have heard testimony that when law enforcement officers arrested Mr. Wang and Ms. Chen in Fiji, they seized evidence from them.  The evidence allegedly obtained from them at the time of their arrest was properly admitted in this case and may properly be considered by you.  Whether you approve or disapprove of how the evidence was obtained from them should not enter into your deliberations.  Again, what weight you choose to give this evidence is entirely up to you.

15.    Use of Recordings and Transcripts

You have heard audio and video recordings of certain communications, and you have seen certain text messages and other electronic communications.  These recordings and electronic communications were collected in a lawful manner and the collection of them did not violate anyone's rights.  The conversations reflected in the recordings and electronic

communications are evidence in this case. Whether you approve or disapprove of the recording or collection of these conversations may not enter into your deliberations.

You were provided with English-language transcriptions of recorded English-language conversation. As I told you when the recordings were received in evidence, the transcriptions of the English-language portions of the recordings are not evidence. As to English-language conversation, transcripts were provided to you only as an aid, and the actual evidence is what you hear in the recordings. As to English-language conversation, if you hear something different on the recordings than what is set forth in the transcriptions, it is what you hear on the recordings that controls.

As to Mandarin portions of conversations, however, you must accept as evidence the translation of the Mandarin to English set forth in the transcripts. You may not substitute your own translation of the Mandarin, even if you understand Mandarin.

16.  <u>Redactions</u>

Some of the exhibits received in evidence contain redactions, meaning that part of the exhibit was blacked out. The redactions were made to eliminate material that is not relevant at trial.

You are to concern yourself only with the part of the exhibit that has been received in evidence, and you should not speculate about what information was blacked out.

17.  <u>Witness Credibility</u>

You should evaluate the credibility of the witnesses by using your common sense. Common sense is your greatest asset as a juror. Ask yourself whether the witness appeared honest, open, candid, and truthful. Did the witness appear evasive, or as though he or she was trying to hide something? How responsive was the witness to the questions asked on cross-

examination in comparison to the questions posed on direct examination?  You should also consider the witness's ability to recall past events.

If you find that any witness has lied under oath at trial, you should view the testimony of that witness cautiously and weigh it with great care.  It is for you to decide, however, how much of that witness's testimony, if any, you wish to believe.  A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.

You should also keep in mind that few people recall every detail of every event precisely the same way.  It is for you to determine whether inconsistencies in witness accounts are significant or inconsequential.

In sum, it is up to you to decide whether the testimony of a witness is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, to give to that witness's testimony.

In evaluating the testimony of any witness, you may consider, among other things:

– the witness's intelligence;

– the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

– the witness's memory;

– any interest, bias, or prejudice the witness may have;

– the manner of the witness while testifying; and

– the reasonableness of the witness's testimony in light of all the evidence in this case.

12

The Government is not required to prove the essential elements of an offense by any particular number of witnesses.  The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of an essential element of an offense if you believe that that witness has truthfully and accurately related what he or she has told you. Similarly, the testimony of a single witness may provide the basis for reasonable doubt, if you believe that that witness has testified truthfully and accurately.

18.    Prior Inconsistent Statements

Lawyers sometimes argue that, at some earlier time, a witness said or did something that is inconsistent with their trial testimony.

Where evidence of a prior inconsistent statement was introduced, the purpose was to assist you in deciding whether to believe that witness's testimony.  If you find that a witness made an earlier statement that conflicts with that witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness intentionally made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or an insignificant detail; whether the witness had an explanation for the inconsistency; and whether that explanation accords with your common sense.

It is exclusively your responsibility to determine, based upon all the evidence and your own good judgment, whether the prior statement was inconsistent and, if so, how much if any weight to give to the inconsistent statement in determining whether to believe all, part of, or none of the witness's testimony.

13

19.    <u>Witness Bias</u>

In deciding whether to believe a witness, you should consider whether the witness has an interest in the outcome of this case, or is biased in favor of or against one side or the other. You should also consider evidence of any interest or motive that the witness may have in cooperating with one side or the other. It is your duty to consider whether any witness has permitted bias or interest to color his or her testimony. If you find that a witness is biased, you should view his or her testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean he or she has not told the truth. It is for you to decide from your observations, and applying your common sense, life experience, and all the other considerations I have mentioned, whether the possible interest of a witness has – intentionally or otherwise – colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable, and reject as much as you deem unworthy of acceptance.

20.    <u>Law Enforcement Witnesses</u>

You have heard testimony from witnesses employed by the Drug Enforcement Administration or "DEA." The fact that a witness is employed by a law enforcement agency does not mean that that witness's testimony deserves more or less consideration, or greater or lesser weight, than that of any other witness. It is up to you to decide, after reviewing all the evidence, what weight to give the testimony of such a witness.

21.   Opinion Testimony

Yanzi McClarren, Matthew Sider, Fracia Martinez, Christine Herdman, and Heather Harris were permitted to offer opinion testimony in this case. These witnesses were permitted to give opinion testimony because they possess specialized knowledge as a result of their education, training, and work experience. In weighing the testimony of these witnesses, you may consider their qualifications, the reasons they gave for their opinions, and the reliability of the information supporting those opinions, as well as all the factors I have previously mentioned for evaluating witness testimony. To the extent you find the testimony of these witnesses credible and reliable, you may rely on it. To the extent you do not find their testimony credible and reliable, you need not rely on it. Opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

22.   Improper Considerations:  Race, Religion, National Origin, Sex, or Age

Your verdict must be based solely on the evidence developed at trial or the lack of evidence. As I instructed you previously, it would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about a defendant's race, religion, national origin, sex, or age. Similarly, it would be improper for you to consider any personal feelings you may have about the race, religion, national origin, sex, or age of any witness or anyone else involved in this case. Both sides are entitled to a trial free of prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

23.   Persons Not on Trial

You may not draw any inference, whether favorable or unfavorable, as to either side from the fact that no person other than Mr. Wang and Ms. Chen is on trial here. You may

15

not speculate as to the reasons why other people are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.

24.    <u>Uncalled Witnesses</u>

There are people whose names you heard during the trial but who did not appear to testify.  You should not speculate as to what those people would have testified to had they been called.  Their absence should not affect your judgment in any way.  You should keep in mind my instruction, however, that the law does not impose on a defendant the burden or duty of calling any witnesses or producing any evidence.  It is the Government's burden to prove beyond a reasonable doubt each element of the crime charged in the Indictment.

25.    <u>Defendant's Right Not to Testify</u>

Mr. Wang did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove the defendant's guilt beyond a reasonable doubt.  That burden remains with the Government throughout the trial and never shifts to a defendant.  A defendant is never required to prove that he or she is innocent.

You may not attach any significance to the fact that Mr. Wang did not testify. You may not draw any inference against Mr. Wang because he did not take the witness stand. You may not speculate as to why he did not testify, and you may not consider this against him in any way in your deliberations.

26.    <u>Preparation of Witnesses</u>

You heard evidence that certain witnesses discussed the facts of the case and their testimony with lawyers before the witness appeared in court.

16

Although you may consider that fact when you are evaluating a witness's credibility, you should be aware that there is nothing unusual or improper about a witness meeting with lawyers before testifying.  Indeed, it would be unusual for a lawyer to call a witness to testify without such preparation.

The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

27.    Variation in Dates

The Indictment in this case refers to various dates.  The Government is not required to prove that conduct took place on the precise dates alleged in the Indictment.  The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established through evidence at trial.

28.    Stipulations

You have heard evidence in the form of stipulations, or agreements, as to certain facts.  Where the parties have entered into an agreement as to certain facts, you must regard the agreed-upon facts as true.

29.    Illustrative Aids

Dr. Herdman used certain slides during her testimony, and Ms. Harris was questioned about Dr. Herdman's slides during her testimony.  During Agent Medrano's testimony, he used a chart he had prepared of web pages he had preserved from certain websites.  Dr. Herdman's slides and Agent Medrano's chart are illustrative aids.  The slides and the chart were shown to help you understand the witnesses' testimony.  An illustrative aid is not evidence, however, and cannot be considered proof of any fact.

30.    <u>Multiple Counts – Multiple Defendants</u>

Mr. Wang and Ms. Chen are charged with multiple offenses.  In a moment, I will explain to you in detail what crimes each defendant is charged with and the elements of those crimes.

You should be aware, however, that the number of offenses each defendant is charged with is not evidence of guilt, and the mere number of counts charged in this case should not influence your decision in any way.

Moreover, in our system of justice, guilt is personal and individual.  Accordingly, you must separately consider the evidence against each defendant on each offense charged, even where the Government has charged both defendants in a single count.  For each defendant and each offense, you must decide whether the Government has proven beyond a reasonable doubt that a particular defendant is guilty of a particular offense.  You will be asked to return a separate verdict for each defendant as to each offense with which that defendant has been charged.

## II.    **INSTRUCTIONS AS TO SPECIFIC CHARGES**

I will now turn to the specific charges in this case.

1.    <u>Significance of the Indictment</u>

As I have told you, the charges against the Defendants are contained in an indictment.  An indictment is not evidence of the guilt of a defendant.  It is merely an accusation. The indictment gives a defendant notice of the charges against him or her, and it informs the Court and the public of the nature of the accusation.

Given that an indictment is proof of nothing, a defendant begins trial with a clean slate and without any evidence against him or her.

2.    Charges in the Indictment

The Indictment in this case contains five charges or counts.

a.    Count One

Count One reads as follows:

From at least in or about November 2022, up to and including in or about June 2023, in the Southern District of New York, China, Mexico, Thailand, Fiji, and elsewhere, Qingzhou Wang, a/k/a "Bruce," Yiyi Chen, a/k/a "Chiron," and Er Yang, a/k/a "Anita," the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

It was a part and an object of the conspiracy that Qingzhou Wang, a/k/a "Bruce," Yiyi Chen, a/k/a "Chiron," and Er Yang, a/k/a "Anita," the defendants, and others known and unknown, would and did manufacture, distribute, possess with intent to manufacture, and possess with intent to distribute controlled substances, in violation of Title 21, United State Code, Section 841(a)(1).

The controlled substances that Qingzhou Wang, a/k/a "Bruce," Yiyi Chen, a/k/a "Chiron," and Er Yang, a/k/a "Anita," the defendants, conspired to manufacture, distribute, possess with intent to manufacture, and possess with intent to distribute were:  (i) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 100 grams and more of mixtures containing a detectable amount of a fentanyl-related substance.

b.    Count Two

Count Two reads as follows:

From at least in or about November 2022, up to and including in or about June 2023, in the Southern District of New York, China, Mexico, Thailand, Fiji, and elsewhere, Qingzhou Wang, a/k/a "Bruce," Yiyi Chen, a/k/a "Chiron," and Er Yang, a/k/a "Anita," the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

It was a part and object of the conspiracy that Qingzhou Wang, a/k/a "Bruce," Yiyi Chen, a/k/a "Chiron," and Er Yang, a/k/a "Anita," the defendants, and others known and unknown, would and did manufacture and distribute a listed chemical, intending, knowing, and having reasonable cause to believe that such chemical would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Section 959(a).

The listed chemical that Qingzhou Wang, a/k/a "Bruce," Yiyi Chen, a/k/a "Chiron," and Er Yang, a/k/a "Anita," the defendants, and others known and unknown, conspired to manufacture and distribute, intending, knowing, and having reasonable cause to believe that such chemical would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, was 1-boc-4-AP and its salts, which the defendants knowingly and intentionally imported with the intent to manufacture a controlled substance, to wit, fentanyl, and knowingly and intentionally imported, knowing and having reasonable cause to believe that such listed chemical would be used to manufacture a controlled substance, to wit, fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), 960(d)(1), 960(d)(3), and Title 21, Code of Federal Regulations, Part 1310.02(a)(39).

c.    Count Three

Count Three reads as follows:

From at least in or about November 2022, up to and including in or about January 2023, in the Southern District of New York, China, and elsewhere, Qingzhou Wang, a/k/a "Bruce," and Er Yang, a/k/a "Anita," the defendants, knowingly and intentionally manufactured and distributed a listed chemical, and aided and abetted the same, intending, knowing, and having reasonable cause to believe that such chemical would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States.

The listed chemical that Qingzhou Wang, a/k/a "Bruce," and Er Yang, a/k/a "Anita," the defendants, knowingly and intentionally manufactured and distributed, and aided and abetted the same, intending, knowing, and having reasonable cause to believe that such chemical would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, was 1-boc-4-AP and its salts, which the defendants knowingly and intentionally imported with intent to manufacture a controlled substance, to wit, fentanyl, and knowingly and intentionally imported, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, to wit, fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), 960(d)(1), and 960(d)(3), and Title 21, Code of Federal Regulations, Part 1310.02(a)(39).

d.    Count Four

Count Four reads as follows:

From at least in or about November 2022, up to an including in or about January 2023, in the Southern District of New York, China, and elsewhere, Qingzhou Wang, a/k/a "Bruce," and Er Yang, a/k/a "Anita," the defendants, and others known and unknown, knowingly

21

and intentionally manufactured and distributed a listed chemical, and aided and abetted the same, intending, knowing, and having reasonable cause to believe that such chemical would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States."

The listed chemical that Qingzhou Wang, a/k/a "Bruce," and Er Yang, a/k/a "Anita," the defendants, knowingly and intentionally manufactured and distributed, and aided and abetted the same, intending, knowing, and having reasonable cause to believe that such chemical would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, was methylamine and its salts, in violation of Title 21, United States Code, Section 960(d)(7) and Title 21, Code of Federal Regulations, Part 1310.02(a)(14).

     e.    <u>Count Five</u>

Count Five reads as follows:

From at least in or about November 2022, up to and including in or about June 2023, in the Southern District of New York, China, Mexico, Thailand, Fiji, and elsewhere, Qingzhou Wang, a/k/a "Bruce," Yiyi Chen, a/k/a "Chiron," and Er Yang, a/k/a "Anita," the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering offenses in violation of Title 18, United States Code, Section 1956.

It was part and an object of the conspiracy that Qingzhou Wang, a/k/a "Bruce," Yiyi Chen, a/k/a "Chiron," and Er Yang, a/k/a "Anita," the defendants, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place

outside the United States, in an amount exceeding $10,000, with the intent to promote the carrying on of specified unlawful activity, to wit, felonious narcotics offenses involving controlled substances and listed chemicals (as those terms are defined in the Controlled Substances Act), in violation of Title 18, United States Code, Section 1956(a)(2)(A).

Mr. Wang and Ms. Chen deny all of the charges in the Indictment and contend that the Government has not proven any of these charges beyond a reasonable doubt. As I have said, the Indictment does not constitute evidence that either defendant committed any of the crimes charged in the Indictment.

As I have said, you will be asked to render a verdict as to each defendant and as to each count. Accordingly, you must consider – as to each defendant and as to each count – whether the Government has proven all of the elements of each offense beyond a reasonable doubt. I will now instruct you as to the elements of these offenses.

3.    Count One – Fentanyl and Ortho-Methylfentanyl Conspiracy

a.    Introduction

As I stated, Count One charges Mr. Wang and Ms. Chen with conspiring, between in or about November 2022 and in or about June 2023, to manufacture, distribute, and possess with intent to distribute fentanyl and a fentanyl-related substance, in violation of the controlled substances laws of the United States. The alleged fentanyl-related substance referred to in Count One is ortho-methylfentanyl.

A conspiracy is a kind of criminal partnership – an agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate the controlled substances laws is an independent offense, separate and distinct from the crime of actually manufacturing or

distributing controlled substances or possessing controlled substances with the intent to distribute them. Indeed, a defendant can be found guilty of the crime of conspiracy to violate the federal controlled substances laws even where the substantive crime that was the object of the conspiracy – here, manufacturing, distributing, or possessing with intent to distribute, fentanyl and a fentanyl-related substance known as ortho-methylfentanyl – was never actually committed. That is because conspiracy to violate the controlled substances laws is a stand-alone, separate crime premised on an illegal agreement.

      b.    <u>Fentanyl and Ortho-Methylfentanyl Conspiracy - Elements</u>

To meet its burden of proving the conspiracy charged in Count One of the Indictment, the Government must prove the following elements beyond a reasonable doubt:

<u>First</u>, the Government must prove the existence of the conspiracy charged in Count One; in other words, that between November 2022 and June 2023 there was, in fact, an agreement or understanding between two or more people to violate those provisions of the law that make it a crime to unlawfully manufacture, distribute, or possess with intent to distribute, fentanyl or the alleged fentanyl-related substance known as ortho-methylfentanyl.

<u>Second</u>, the Government must prove that the defendant you are considering knowingly became a member of that conspiracy; that is, that he or she knowingly and intentionally associated themself with the conspiracy and participated in the conspiracy to unlawfully manufacture, distribute, or possess with intent to distribute fentanyl or the alleged fentanyl-related substance known as ortho-methylfentanyl.

      i.    <u>First Element – Existence of a Conspiracy</u>

A conspiracy is a combination, agreement or understanding between two or more people to accomplish by concerted action a criminal or unlawful purpose. Here, the Indictment

alleges that Mr. Wang, Ms. Chen, Er Yang, a/k/a "Anita," and others entered into an unlawful

agreement to manufacture, distribute, or possess with intent to distribute fentanyl or the alleged

fentanyl-related substance known as ortho-methylfentanyl.

The gist, or essence, of the crime of conspiracy is an unlawful agreement between

two or more people to violate the law. The first element of the crime of conspiracy thus has two

parts: (i) the unlawful agreement; and (ii) the object of the conspiracy.

ii.    First Element – Part One: The Unlawful Agreement

To establish a conspiracy, the Government is not required to show that two or

more people sat down around a table and entered into a solemn pact, orally or in writing, stating

that they had formed a conspiracy to violate the law and spelling out all the details of the plans

and the means by which the unlawful project is to be carried out, or the part that each of the

people who is a party to the conspiracy is going to play.

When people decide to enter into a criminal conspiracy, often much is left to the

unexpressed understanding. Conspirators do not usually reduce their agreements to a formal

writing. They don't typically publicly broadcast their plans. From its very nature, a conspiracy

is almost always secret in its origin and execution.

It is enough if two or more people, in some way or manner, impliedly or tacitly,

come to an understanding to violate the law. Express language or specific words are not required

to indicate assent or agreement to the conspiracy. You need only find that two or more people

entered into the unlawful agreement alleged in Count One to find that a conspiracy existed.

What the Government must prove is that there was a mutual understanding, either spoken or

unspoken, between two or more people to cooperate with each other to violate the law and to

accomplish an unlawful act.

In determining whether the Government has proven the unlawful agreement alleged in Count One, you should consider the proven acts and conduct of the alleged co-conspirators undertaken to carry out the apparent criminal purpose. The adage "actions speak louder than words" is applicable here. Often, the only evidence that is available is that of disconnected acts that, when considered in connection with one another, show a conspiracy or an agreement to secure a particular result just as satisfactorily and conclusively as more direct proof. As I have said, it is not necessary that the conspiracy actually succeed for you to conclude that it existed.

In deciding whether the conspiracy charged in Count One existed, you may consider all the evidence of the acts, conduct, and statements of Mr. Wang and Ms. Chen, along with all the evidence of the acts, conduct, and statements of those you determine the Government has proven were co-conspirators of Mr. Wang or Ms. Chen, and the reasonable inferences to be drawn from that evidence. When people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy. Accordingly, the reasonably foreseeable acts or statements of any member of the conspiracy, committed in furtherance of the common purpose of the conspiracy, are deemed under the law to be the acts or statements of all the members of the conspiracy, and all of the members of the conspiracy are responsible for such acts or statements. This rule applies even though such acts or statements were not made or committed in the presence of Mr. Wang or Ms. Chen or were made or committed without their knowledge.

Before you may consider the acts or statements of a co-conspirator in deciding the guilt of Mr. Wang or Ms. Chen, however, you must first determine that the acts were committed or statements were made during the existence of, and in furtherance of, the alleged unlawful

26

scheme. If the acts were done or the statements were made by someone who you do not find to have been a member of the conspiracy, or if they were not in furtherance of the charged conspiracy, they may not be considered by you in deciding whether Mr. Wang or Ms. Chen is guilty.

It is sufficient to establish the existence of the charged conspiracy that you find beyond a reasonable doubt that the minds of at least two alleged conspirators met in an understanding way and that they agreed, as I have explained, to work together to accomplish the object of the conspiracy alleged in Count One of the Indictment.

    iii.    <u>First Element – Part Two: Object of the Conspiracy</u>

The second part of the first element relates to the object or objective of the alleged conspiracy. The object of a conspiracy is the illegal goal that the co-conspirators agreed to attempt to achieve. Here, Count One of the Indictment charges that the object of the conspiracy was to unlawfully manufacture, distribute, or possess with intent to distribute, fentanyl or the alleged fentanyl-related substance known as ortho-methylfentanyl.

I will now define the terms "manufacture," "distribute," "possess," "possess with intent to distribute."

To "manufacture" a controlled substance means to produce, to prepare, or process it, or to engage or participate in a process that results in the production of the controlled substance.

To "distribute" means to deliver, to pass over, to hand over something to another person, or to cause something to be delivered, passed on, or handed over to another. Distribution does not require a sale, but the term includes sales.

To "possess" means having custody or control of an object. The legal concept of possession is different from the everyday usage of the term. Actual possession is what most of us think of as possession; that is, having physical custody or control of an object. A person need not have actual, physical possession – that is, physical custody of an object – to be in legal possession of it, however. If an individual has the ability to exercise substantial control over an object, even if he or she does not have the object in their physical custody, and that person has the intent to exercise such control, then he or she is in possession of that article. This is called constructive possession.

Control over an object may be demonstrated by the existence of a working relationship between the person having such control and the person with actual physical custody. The person having control possesses the object because he or she has an effective working relationship with the people who have actual physical custody of the object, and because he or she can direct the movement or transfer or disposition of the object. In this manner, a businessman may possess things that are scattered throughout a number of stores or offices or installations around and about a city or a country.

More than one person can have control over the same quantity of controlled substances. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If more than one person has possession of it, as I have defined possession for you, then possession is joint.

To "possess with intent to distribute" means having custody or control of something with the state of mind or purpose to distribute it to someone else.

It is not necessary for the Government to prove that the conspiracy charged in Count One had as its object the manufacture of the alleged controlled substances, distribution of

28

the alleged controlled substances, <u>and</u> possession of the alleged controlled substances with the intent to distribute them.  It is sufficient if you find, beyond a reasonable doubt, that the conspiracy had as its object the manufacture of the alleged controlled substances, the distribution of the alleged controlled substances, or the possession of the alleged controlled substances with the intent to distribute them.  You must, however, be unanimous as to which of these alleged objectives – manufacture, distribution, or possession with intent to distribute – were in fact objects of the conspiracy charged in Count One.

1.    <u>First Element – Drug Type</u>

The Government has alleged that the conspiracy charged in Count One involved two controlled substances:  fentanyl and an alleged fentanyl-related substance known as ortho-methylfentanyl.

Fentanyl is a controlled substance under U.S. law.

A "fentanyl-related substance" is also a controlled substance under U.S. law.

A "fentanyl-related substance" is "any substance . . . that is structurally related to fentanyl by one or more of the following modifications: . . . [r]eplacement of the aniline ring with any aromatic monocycle whether or not further substituted in or on the aromatic monocycle."  Here, the Government alleges that ortho-methylfentanyl is a "fentanyl-related substance" within the meaning of this definition.  If you conclude that ortho-methylfentanyl is structurally related to fentanyl in this way, then it is a "fentanyl-related substance" under U.S. law.  If you conclude that ortho-methylfentanyl is not structurally related to fentanyl in this way, then it is not a "fentanyl-related substance" under U.S. law.[1]

---

[1] 21 C.F.R. § 1308.11(h)(30)(i)(D).

If you find that the Government has proven beyond a reasonable doubt an agreement to manufacture, distribute, or possess with the intent to distribute either fentanyl or a fentanyl-related substance, that is sufficient for purposes of this element.  The Government need not prove an unlawful agreement as to both fentanyl and a fentanyl-related substance.

The purity of the controlled substances involved is not an element of the crime charged, so you need not be concerned with that.  Similarly, in determining whether the Government has proven that the conspiracy charged in Count One existed, you need not consider whether the Government has proven that a particular quantity of a controlled substance was involved in the charged conspiracy.

As I stated before, with respect to the conspiracy charged in Count One, it is not necessary for the Government to prove that Mr. Wang, Ms. Chen, or another co-conspirator actually manufactured, distributed, or possessed one of the specified controlled substances.  You need only find that the defendant you are considering knowingly agreed with at least one other person to manufacture, distribute, or possess with intent to distribute one of the specified controlled substances.

In order for the Government to prove that the conspiracy alleged in Count One existed, it must show an unlawful agreement between two or more people who were not acting at the direction of the Government at the time of the conspiracy.  Two of the Government's witnesses here – Antonio Garcia and Jorge Rodriguez – were acting at the direction of the Government.  Accordingly, you cannot consider either Mr. Garcia or Mr. Rodriguez in determining whether the Government has proven beyond a reasonable doubt that two or more people entered into the necessary unlawful agreement or understanding.

iv.    <u>Second Element – Membership in a Conspiracy</u>

If you find beyond a reasonable doubt that the conspiracy charged in Count One existed, and that the conspiracy had as its object one or more of the illegal purposes alleged in Count One, then you must next determine whether the defendant you are considering participated in the charged conspiracy knowingly and intentionally, and agreed to take part in the conspiracy in order to promote and cooperate in achieving its unlawful objectives.

The terms "knowingly" and "intentionally" mean that the Government must prove beyond a reasonable doubt that – in joining the conspiracy – the defendant you are considering knew what he or she was doing – that he or she took the actions in question deliberately and voluntarily.

A person acts "knowingly" if he or she acts intentionally and voluntarily and not because of ignorance, mistake, accident, or carelessness.

An act is done "intentionally" if it is done deliberately and purposefully; that is, the defendant's acts must have been the product of his or her conscious objective rather than the result of force, mistake, accident, mere negligence, or some other innocent reason.

1.    Membership in a Conspiracy – Knowledge of
       <u>the Controlled Substance</u>

In connection with Count One, the Government must prove beyond a reasonable doubt that the defendant you are considering knew that the substance the conspirators had agreed to manufacture, distribute, or possess with intent to distribute, was a controlled substance. The Government may meet this burden in either of two ways:

First – as to fentanyl – the Government may prove that the defendant you are considering agreed to manufacture, distribute, or possess with intent to distribute fentanyl. In connection with this method of proof, the Government need not show that the defendant knew

31

that it is unlawful under United States federal drug laws to manufacture, distribute, or possess with intent to distribute fentanyl.

The second and alternative method of proof requires the Government to prove that the defendant you are considering knew that the substance that he or she had agreed to manufacture, distribute or possess with intent to distribute was controlled or regulated by United States federal drug laws, regardless of whether the defendant also knew the specific nature of that substance – i.e., fentanyl or ortho-methylfentanyl.  It is not necessary that the defendant knew the specific law controlling or regulating the substance, so long as the defendant knew that the substance was controlled or regulated by United States federal drug laws.

Either method of proof is sufficient here; the Government need not prove the defendant's knowledge in both of these ways.  If you find beyond a reasonable doubt that the defendant you are considering knew that the substance the conspirators had agreed to manufacture, distribute, or possess with intent to distribute was fentanyl, or that the substance that the conspirators had agreed to manufacture, distribute, or possess with intent to distribute was controlled or regulated by United States federal drug laws, then the requirement that the defendant know the substance at issue was a controlled substance is met.[2]

> 2.    Membership in a Conspiracy – Proof of Knowledge and Intent

Whether a defendant acted knowingly and intentionally may be proven by the defendant's conduct and the surrounding facts and circumstances.  Knowledge and intent are a matter of inference from proven facts.  Science has not yet devised a method of looking into a person's mind and discovering what that person was thinking at a particular time.  Accordingly,

---

[2] McFadden v. United States, 576 U.S. 186 (2015); United States v. Demott, 906 F.3d 231, 244 (2d Cir. 2018).

you will consider evidence of acts and communications alleged to have taken place involving the defendant you are considering, or in his or her presence, and determine whether this evidence is sufficient to prove beyond a reasonable doubt the defendant's knowledge and intent.

A defendant need not know the full extent of the conspiracy or know all of the activities of the conspiracy or even who all of the co-conspirators are. Indeed, a defendant may know only one other member of the conspiracy and still be a co-conspirator.

It is also not necessary for the Government to show that the defendant received or anticipated any financial benefit from his or her participation in the charged conspiracy, so long as he or she participated in it in the fashion I have described.

Moreover, each member of a conspiracy may perform separate and distinct acts in connection with their participation in the conspiracy. Some conspirators may play major roles, while others play minor roles in the scheme. An equal role is not what the law requires. The fact that a defendant's participation in a conspiracy was more limited than that of a co-conspirator should not affect your verdict. Indeed, even a single act may be sufficient to draw a defendant within the scope of a charged conspiracy.

However, a person who has no knowledge of a conspiracy but happens to act in a way that furthers some object or purpose of the conspiracy does not thereby become a co-conspirator. More is required under the law. Similarly, a person's mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is taking place. In other words, knowledge without agreement and participation is not sufficient. You may not find that Mr. Wang or Ms. Chen was a member of the charged conspiracy merely because of a friendship or a business association with an alleged co-conspirator. Similarly, mere discussion of common aims

33

and interests does not necessarily establish membership in a conspiracy.  What is necessary is that the defendant you are considering joined in the charged conspiracy with knowledge of its unlawful purpose and with an intent to aid in the accomplishment of its unlawful objectives.

It is not a defense to a conspiracy charge that the object of the conspiracy could not be achieved because of circumstances that the conspirators did not know about.  Thus, you may find a defendant guilty of conspiracy even though it would have been impossible for him or her to carry out the plan successfully, as long as he or she genuinely intended to help carry out the plan.  It is also not dispositive that individuals acting at the direction of the Government introduced the idea of manufacturing or distributing the controlled substances at issue in the United States, as long as the defendant you are considering then took a voluntary action in furtherance of the charged conspiracy.

The critical question is:  Has the Government proven beyond a reasonable doubt that the defendant you are considering joined the charged conspiracy and knowingly and intentionally participated in it with an awareness of its purpose and as something he or she wished to bring about?

3.    Membership in a Conspiracy – Time Period

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members.

If you find that Mr. Wang or Ms. Chen was a knowing and intentional participant in the charged conspiracy within the alleged time period, the point at which the defendant joined the conspiracy is not relevant to your decision.  A defendant may join a conspiracy at any point during its progress and be held responsible for all that went on before he or she joined and all that occurs thereafter.

34

With respect to the time period of the conspiracy alleged in Count One, it is sufficient if you find that the defendant you are considering was a member of the conspiracy at any point between November 2022 and June 2023.  In making this determination, you should bear in mind that once you find that a person knowingly and intentionally participates in a conspiracy to violate the law for some time within the period charged, he or she is presumed to continue as a member of the conspiracy unless he or she proves that he or she took affirmative steps to withdraw from the conspiracy or the conspiracy ended.

c.    Count One – Venue

In addition to the elements of conspiracy that I have discussed, you must also consider the issue of venue – namely, whether an overt act in furtherance of the conspiracy occurred within the Southern District of New York.

The Southern District of New York includes, among other areas, Manhattan, the Bronx, and Westchester County, as well as bridges over bodies of water within the boundaries of Manhattan, the Bronx, Queens, and Brooklyn, such as the George Washington Bridge and the Verrazano-Narrows Bridge.[3]

As to the conspiracy charged in Count One, it is sufficient to find venue in the Southern District of New York if you find that any act in furtherance of that offense occurred in the Southern District of New York, and that it was reasonably foreseeable to the defendant you are considering that the act would take place in the Southern District of New York.  You should be aware that a call placed by a person located in this District to the defendant you are considering or to a co-conspirator – even if the caller was acting at the Government's direction –

---

[3] 28 U.S.C. § 112(b).

would be a sufficient basis on which to find venue, so long as the defendant or co-conspirator used the call in furtherance of the offense you are considering.

As to venue and as to venue alone, the Government's burden is not proof beyond a reasonable doubt.  Instead, venue may be established by a preponderance of the evidence – more likely than not.  Accordingly, the Government has satisfied the venue requirement if you conclude that it is more likely than not that any act in furtherance of the charged conspiracy took place in the Southern District of New York.

If you find that the Government has not proven venue by a preponderance of the evidence, then you must find Mr. Wang and Ms. Chen not guilty.  Proof of proper venue is required as to each charge in the Indictment.

   d.    Count One – Drug Type and Quantity

If you find that the Government has proven beyond a reasonable doubt that the defendant you are considering is guilty of participating in the conspiracy charged in Count One, you must then determine the type or types of controlled substances involved in that conspiracy and their weight.  The verdict form you will be given asks you to state your determinations as to drug type and quantity, which the Government must prove beyond a reasonable doubt.

   i.    Drug Type

The conspiracy charged in Count One allegedly involved two controlled substances:  fentanyl and an alleged fentanyl-related substance known as ortho-methylfentanyl.  I have previously defined "fentanyl-related substance" for you, and as I have explained, you will be asked to determine whether ortho-methylfentanyl is a "fentanyl-related substance" under that definition.

I remind you that the Government need not prove the purity of the controlled substance at issue. Any mixture or substance containing a detectable amount of fentanyl or a detectable amount of a "fentanyl-related substance" is sufficient.

  ii. <u>Drug Quantity</u>

You also need not determine the precise quantity of controlled substances involved in the conspiracy charged in Count One. Instead, the verdict form will ask you to state whether the conspiracy involved more than certain specified amounts of the controlled substance you are considering.

If you determine that the conspiracy charged in Count One involved fentanyl, indicate on the verdict form whether the Government has established beyond a reasonable doubt that that conspiracy involved 400 grams or more of fentanyl, 40 grams or more of fentanyl, or some lesser quantity of mixtures or substances containing a detectable amount of fentanyl.

If you determine that the conspiracy charged in Count One involved a "fentanyl-related substance," then you should indicate on the verdict form whether the Government has established beyond a reasonable doubt that the conspiracy involved 100 grams or more of that "fentanyl-related substance," 10 grams or more of that "fentanyl-related substance," or some lesser quantity of mixtures or substances containing a detectable amount of a "fentanyl-related substance."

If you determine that the conspiracy charged in Count One involved both fentanyl and a "fentanyl-related substance," indicate on the verdict form the quantity of each of those controlled substances.

Your findings as to quantity must be unanimous in that all of you must agree that the conspiracy involved at least the quantity you indicate of the controlled substance you are

considering.  For example, if you all agree that the conspiracy involved 400 grams or more of fentanyl, you should indicate that on the verdict sheet.  If, however, some of you conclude that the conspiracy involved 40 grams or more of fentanyl, while others believe that it involved 400 grams or more of fentanyl, you must indicate 40 grams or more of fentanyl on the verdict form, because all of you would only be in agreement that the conspiracy involved 40 grams or more of fentanyl.  If you conclude that the Government has not proven beyond a reasonable doubt that the conspiracy involved at least 40 grams or more of fentanyl, then you must also indicate that on the verdict form.

### iii.    Quantity Determination as to Each Defendant

In making your determination as to quantity, you may take into account the amount of fentanyl and/or "fentanyl-related substance" that the conspiracy as a whole involved, so long as that quantity was either known to the defendant you are considering or reasonably foreseeable to him or her and within the scope of the criminal activity that he or she jointly undertook.  The drug quantity attributable to a defendant who has been found beyond a reasonable doubt to be a participant in the conspiracy also includes quantities that he or she agreed to manufacture, distribute, or possess with intent to distribute, regardless of whether he or she ultimately committed the substantive crime.

### e.    Count One – Fentanyl Analogue

If you find that the Government has proven beyond a reasonable doubt that the defendant you are considering is guilty of participating in the conspiracy charged in Count One, and that the conspiracy involved a "fentanyl-related substance," you will be asked to determine whether the "fentanyl-related substance" is an analogue of fentanyl.  The verdict form will

include a space for you to indicate your determination as to this issue, which the Government

must prove beyond a reasonable doubt.

Any substance that has a chemical structure that is substantially similar to the

chemical structure of fentanyl is an analogue of fentanyl.  Substantial similarity in chemical

structure does not require identity in chemical structure.  One substance may be an analogue to

another substance despite minor differences in chemical structure.  Examples of minor

differences in chemical structure include the substitution of one atom or atom group for another

atom or atom group, or the replacement of one atom by an atom of a different element.

If you reach this question, your finding as to whether the "fentanyl-related

substance" involved in the conspiracy charged in Count One is an analogue of fentanyl must be

unanimous.  Accordingly, if all of you agree that the "fentanyl-related substance" involved in the

conspiracy is an analogue of fentanyl, you should indicate that on the verdict form.  If, however,

some of you conclude that the "fentanyl-related substance" is an analogue of fentanyl while

others do not, you must indicate on the verdict form that the "fentanyl-related substance" is not

an analogue of fentanyl.[4]

4.    Count Two – Conspiracy to Import 1-boc-4-AP

Count Two charges that between November 2022 and June 2023 Mr. Wang, Ms.

Chen, Er Yang, a/k/a "Anita," and others known and unknown conspired to manufacture and

distribute the "listed chemical" 1-boc-4-AP, intending, knowing, and having reasonable cause to

believe that that chemical would be unlawfully imported into the United States.

---

[4] See United States v. McCray, 7 F.4th 40 (2d Cir. 2021); Charge in United States v. Aziz, 21 Cr.
113 (PMH) (S.D.N.Y. 2024).

To find a defendant guilty of Count Two, you must find that the Government has proven each of the following elements beyond a reasonable doubt:

First, the Government must prove the existence of the conspiracy charged in Count Two; and

Second, the Government must prove that the defendant you are considering knowingly and intentionally became a member of the conspiracy.

The instructions I have given you concerning the Government's burden to prove the existence of the charged conspiracy and the Defendants' membership in it apply with equal force here. As in connection with Count One, the Government must also prove that an act in furtherance of the conspiracy charged in Count Two occurred within the Southern District of New York. As I have instructed you, the Government's burden of proof as to venue is a preponderance of the evidence – more likely than not.

Count One and Count Two differ as to the alleged object of the conspiracy, however. Accordingly, I must give you additional instructions concerning the object of the conspiracy charged in Count Two.

a.    Count Two – Object of the Conspiracy

Count Two of the Indictment charges that the object of the conspiracy was to unlawfully manufacture and distribute a "listed chemical" – 1-boc-4-AP – intending, knowing, and having reasonable cause to believe that that chemical would be unlawfully imported into the United States.

The term "import" means to bring or transport a substance into the United States from someplace outside the United States.

It is not necessary for the Government to prove that the conspiracy charged in Count Two had as its object both the manufacture and the distribution of 1-boc-4-AP; it is sufficient if you find, beyond a reasonable doubt, that the conspiracy was aimed at either the manufacture or the distribution of 1-boc-4-AP, while intending, knowing, or having reasonable cause to believe that that chemical would be unlawfully imported into the United States. You must, however, be unanimous as to which of these objectives – manufacture or distribution or both – the conspiracy had.

        b.     <u>Count Two – Chemical Type</u>

I instruct you that 1-boc-4-AP is a "listed chemical" under United States law. The quantity and purity of the listed chemical are not elements of Count Two, so you need not be concerned with quantity or purity in determining whether the defendants are guilty of Count Two.

        i.     <u>Count Two – Knowledge of the Listed Chemical</u>

For Count Two, the Government must prove beyond a reasonable doubt that the defendant you are considering knew that the chemical the conspirators agreed to manufacture or distribute – intending, knowing, and having reasonable cause to believe that that chemical would be unlawfully imported into the United States – was a "listed chemical." The Government may meet this burden in either of two ways:

First, the Government may prove that the defendant you are considering knew that the chemical at issue was 1-boc-4-AP, regardless of whether that defendant also knew that 1-boc-4-AP was controlled or regulated by United States federal drug laws.

Second, and in the alternative, the Government may prove that the defendant you are considering knew that the chemical at issue was controlled or regulated by United States

federal drug laws, regardless of whether the defendant knew the specific identity of the chemical. It is not necessary that the defendant knew the specific law controlling or regulating the chemical, so long as the defendant knew that the chemical was controlled or regulated under United States federal drug laws.

The Government need not to prove the defendant's knowledge in both of these ways. Either method of proof is sufficient. Put another way, if you find beyond a reasonable doubt that the defendant you are considering knew that the chemical the conspirators agreed to manufacture or distribute was 1-boc-4-AP, or knew that the chemical was controlled or regulated under United States federal drug laws, then the requirement that the defendant know the chemical was a "listed chemical" is met.[5]

c.    Count Two – Time Period

With respect to the time period of the conspiracy alleged in Count Two, it is sufficient if you find that the defendant you are considering was a member of the conspiracy at any point between November 2022 and June 2023. As I have stated, a person who has knowingly and intentionally joined a conspiracy is presumed to continue as a member of the conspiracy unless he or she proves that he or she took affirmative steps to withdraw from the conspiracy or the conspiracy ended.

d.    Count Two – Intent to Manufacture Fentanyl

If you find that the Government has proven beyond a reasonable doubt that the defendant you are considering is guilty of participating in the conspiracy charged in Count Two, the verdict form will ask you to answer two additional questions. As to the matters addressed in

---

[5] McFadden v. United States, 576 U.S. 186 (2015); United States v. Demott, 906 F.3d 231 (2d Cir. 2018) as applied to 21 U.S.C. §§ 959(a); 960(d)(7).

these questions, the Government likewise bears the burden of proving them beyond a reasonable doubt.

First, you will be asked to indicate whether the defendant you are considering who conspired to manufacture and distribute 1-boc-4-AP did so with the intent that it be used to unlawfully manufacture fentanyl.

Second, you will be asked to indicate whether the defendant you are considering who conspired to manufacture and distribute 1-boc-4-AP knew or had reasonable cause to believe that the 1-boc-4-AP would be used to unlawfully manufacture fentanyl.

If you reach these questions, your findings on each question must be unanimous. Accordingly, if all of you agree that the defendant you are considering intended that the 1-boc-4-AP be used to unlawfully manufacture fentanyl, then you should so indicate on the verdict form. If, however, some of you conclude that the defendant you are considering did not intend that the 1-boc-4-AP be used to unlawfully manufacture fentanyl, you will indicate on the verdict form that that defendant did not intend that the 1-boc-4-AP be used to unlawfully manufacture fentanyl.[6]

5.    Counts Three & Four – Importation of Listed Chemicals

Count Three of the Indictment charges Mr. Wang and Er Yang, a/k/a "Anita," with manufacturing and distributing the listed chemical 1-boc-4-AP between November 2022 and January 2023, intending, knowing, and having reasonable cause to believe that that chemical would be unlawfully imported into the United States, and aiding and abetting the same.

Count Four of the Indictment charges that Mr. Wang, Er Yang, a/k/a "Anita," and others known and unknown manufactured and distributed the listed chemical methylamine

---

[6] Adapted from 21 U.S.C. §§ 960(d)(1) and (3), and 21 C.F.R. § 1310.02(a)(39).

between November 2022 and January 2023, intending, knowing, and having reasonable cause to believe that that chemical would be unlawfully imported into the United States, and aiding and abetting the same.

   a.  <u>Counts Three and Four – Elements</u>

     To find Mr. Wang guilty of manufacturing and distributing a listed chemical for importation – as charged in Count Three and Count Four of the Indictment – you must find that the Government has proven each of the following elements beyond a reasonable doubt:

     <u>First</u>, the Government must prove that between November 2022 and January 2023, Mr. Wang manufactured or distributed a substance that is a listed chemical outside the United States. The Government need not prove that Mr. Wang both manufactured <u>and</u> distributed a listed chemical. Either is sufficient, but you must be unanimous as to which of these acts you find to have been proven beyond a reasonable doubt. The definitions I gave you earlier for "manufacture" and "distribute" apply with equal force here.

     Count Three charges Mr. Wang with manufacturing and distributing the chemical 1-boc-4-AP, while Count Four charges him with manufacturing and distributing the listed chemical methylamine. I instruct you that both 1-boc-4-AP and methylamine are "listed chemicals" under U.S. law.

     <u>Second</u>, the Government must prove that Mr. Wang did so knowingly and intentionally. I have already defined "knowingly" and "intentionally" for you, and those instructions apply here as well.

     As to Counts Three and Four, the Government must prove that Mr. Wang knew that each of the chemicals he allegedly manufactured or distributed is a "listed chemical." The Government may meet this burden in either of two ways.

First, the Government may prove that Mr. Wang knew that the chemicals at issue in Counts Three and Four were 1-boc-4-AP and methylamine. In connection with this method of proof, the Government need not show that Mr. Wang knew that 1-boc-4-AP and methylamine are controlled or regulated by United States federal drug laws.

Alternatively, the Government may prove that Mr. Wang knew that the substances at issue in Counts Three and Four are controlled or regulated by the United States federal drug laws, regardless of whether he knew that these substances were 1-boc-4-AP and methylamine.

Third, the Government must prove that Mr. Wang either knew or intended that the listed chemicals would be unlawfully imported into the United States. The Government need not prove that Mr. Wang both intended and knew that the listed chemicals would be imported into the United States. You must be unanimous, however, as to which of these states of mind you find to have been proven beyond a reasonable doubt.[7]

In addition to proving beyond a reasonable doubt all of these elements of Counts Three and Four, the Government must prove that an act in furtherance of each alleged offense occurred within the Southern District of New York. The movement of an imported substance from, through, or into this District would be a sufficient basis on which to find venue.[8] As I have instructed you, as to venue, the Government's burden of proof is by a preponderance of the evidence – more likely than not.

---

[7] Adapted from United States v. Romero Padilla, 05 Cr. 1262 (DLC) and United States v. Salazar-Espinoza, 05 Cr. 517 (LAK). The instruction regarding knowledge of the listed chemical is drawn from McFadden v. United States, 576 U.S. 186 (2015) and United States v. Demott, 906 F.3d 231 (2018) as applied to 21 USC §§ 959(a) and 960(d)(7).

[8] 18 U.S.C. § 3237(a).

b.    <u>Counts Three and Four – Aiding and Abetting</u>

Counts Three and Four assert two types of criminal liability:  principal liability and aiding and abetting liability.  Principal liability exists where a defendant personally commits the charged offense.  Aiding and abetting liability is present where someone other than the defendant committed the charged offense, and the defendant – while not himself committing the crime – aids, abets, counsels, or commands another person who commits the offense.  Accordingly, in the event that you were to find that Mr. Wang did not personally commit the offenses charged in Count Three and Count Four, you would go on to consider whether he is guilty as an aider and abettor.

The aiding and abetting statute, Title 18, United States Code, Section 2(a), provides that "[w]hoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal."  You should give these words their ordinary meaning.  A person aids or abets a crime if he knowingly does some act for the purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime charged to be committed.

To "counsel" means to give advice or recommend.  To "induce" means to lead or move by persuasion or influence as to some action or state of mind.  To "procure" means to bring about by unscrupulous or indirect means.  To "cause" means to bring something about, or to effect something.

A person who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself.  Therefore, if you find that the Government has proven beyond a reasonable doubt that another person actually committed the crimes charged in Counts

Three or Four, and that Mr. Wang aided and abetted that person in the commission of that crime, then you may find Mr. Wang guilty of that crime.

The first requirement for aiding and abetting liability is that the crime charged was actually committed. Accordingly, no one can be convicted of aiding and abetting a crime where the underlying crime was not committed. But if you find that the crimes charged in Counts Three and Four were committed by someone other than Mr. Wang, then you must consider whether Mr. Wang aided or abetted the commission of these crimes.

In order to aid and abet another in committing a crime, it is necessary that the defendant willfully and knowingly associate himself in some way with the crime, and that he willfully and knowingly take some action to help make the crime succeed.

The mere presence of a person where a crime is being committed, even coupled with knowledge by that person that a crime is being committed, or the mere acquiescence by a person in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting liability. An aider and abettor must have some interest in the criminal venture and must take some action to assist or encourage the commission of the crime.

In determining whether Mr. Wang aided and abetted the commission of the crimes charged in Counts Three and Four, ask yourself these questions:

1. Did he participate in the crime charged as something he wished to bring about?

2. Did he associate himself with the criminal venture knowingly and willfully?

3. Did he seek by his actions to help make the criminal venture succeed?

If he did, then Mr. Wang may be found guilty as an aider and abettor. If he did not, then Mr. Wang cannot be found guilty as an aider and abettor.

47

     c.    <u>Count Three – Intent to Manufacture Fentanyl</u>

If you find that the Government has proven beyond a reasonable doubt that Mr. Wang is guilty of the crime charged in Count Three, the verdict form will ask you to answer two additional questions.

<u>First</u>, the verdict form will ask you to indicate whether Mr. Wang knowingly and intentionally imported 1-boc-4-AP, or aided and abetted the importation of 1-boc-4-AP, with the intent to manufacture fentanyl. I have already instructed you on the terms "knowingly," "intentionally," and "import," and those instructions apply here as well.

<u>Second</u>, the verdict form will ask you to indicate whether Mr. Wang knowingly and intentionally imported 1-boc-4-AP, or aided and abetted the importation of 1-boc-4-AP, knowing or having reasonable cause to believe that it would be used to manufacture fentanyl.

The Government bears the burden of proving each of these matters beyond a reasonable doubt. If you reach these questions, your findings on each question must be unanimous.[9]

    6.    <u>Count Five – Conspiracy to Commit Money Laundering</u>

Count Five of the Indictment charges that between November 2022 and June 2023, Mr. Wang, Ms. Chen, Er Yang, a/k/a "Anita," and others known and unknown conspired to commit money laundering.

To find a defendant guilty of Count Five, you must find that the Government has proven each of the following elements beyond a reasonable doubt:

<u>First</u>, the Government must prove the existence of the conspiracy charged in Count Five; and

---

[9] Adapted from 21 U.S.C. §§ 960(d)(1) and (3), and 21 C.F.R. § 1310.02(a)(39).

Second, the Government must prove that the defendant you are considering knowingly and intentionally became a member of the conspiracy.

The instructions I have given you concerning the Government's burden to prove the existence of the charged conspiracy and the Defendants' membership in it apply with equal force here. As in connection with the conspiracies charged in Counts One and Two, the Government must also prove – by a preponderance of the evidence – that an act in furtherance of the conspiracy charged in Count Five occurred within the Southern District of New York.

Because the object of the conspiracy alleged in Count Five differs from the objects alleged in Counts One and Two, I must give you additional instructions concerning the object of the conspiracy alleged in Count Five.

a.      Count Five – Object of the Conspiracy

The object of the conspiracy charged in Count Five is to "transport, transmit and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside of the United States, in an amount exceeding $10,000, with the intent to promote the carrying on of specified unlawful activity," here, felony narcotics offenses involving controlled substances and listed chemicals.

i.      Count Five – Elements of Money Laundering

In order to determine whether the Defendants conspired, or agreed, to commit money laundering you must understand what the three elements of the actual or "substantive" crime of money laundering are.

The first element is that the defendant transported, transmitted, or transferred – or attempted to transport, transmit, or transfer – a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States

from or through a place outside the United States.  The term "funds" includes cryptocurrency or virtual currency.

The second element is that the defendant engaged in that transaction with the intent to promote the carrying on of a specified unlawful activity.  The term "promote" means to facilitate, assist, or further something.  The term "specified unlawful activity" includes the controlled substance and listed chemical offenses charged in Counts One through Four of the Indictment.

The third element is that the transaction or series of related transactions at issue involved funds or monetary instruments with a value exceeding $10,000.[10]

A defendant can be found guilty of committing the crime of conspiracy to commit money laundering even where the object of the conspiracy – actual money laundering – was never actually committed.

b.    Count Five – Time Period

With respect to the time period of the conspiracy alleged in Count Five, it is sufficient if you find that the defendant you are considering was a member of the charged conspiracy at any point between November 2022 and June 2023.  I remind you that a person who has knowingly and intentionally joined a conspiracy is presumed to continue as a member of the conspiracy unless he or she proves that he or she took affirmative steps to withdraw from the conspiracy or the conspiracy ended.

---

[10]  Adapted from Sand, Modern Federal Jury Instructions, Instr. 50A-12 to 14; and guidance from United States v. Santos, 553 U.S. 507, 517 (2008) (discussing the meaning of "promote"), United States v. Iossifov, 45 F.4th 899, 913 (6th Cir. 2022) ("while the terms 'monetary instrument' and 'funds' are not defined within the money laundering statute, courts that have addressed this question have unanimously determined that Bitcoin falls under those terms"); United States v. Ulbricht, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) ("The money laundering statute is broad enough to encompass use of Bitcoins in financial transactions.").

7.    <u>Conscious Avoidance</u>

I have provided you with instructions concerning the Government's burden to prove the Defendants' knowledge as to each charge in the Indictment.  In connection with the knowledge issue, I have one additional instruction for you, that applies only to Defendant Chen.

In deciding whether the Government has proven beyond a reasonable doubt that Defendant Chen had knowledge of a fact, you may consider whether she deliberately closed her eyes to what would otherwise have been obvious.  A person may not willfully and intentionally remain ignorant of a fact that is material and important to her conduct in order to escape the consequences of the criminal law.  We refer to this notion of intentionally blinding yourself to what is staring you in the face as "conscious avoidance."

The Government can satisfy its burden as to Defendant Chen's knowledge by proving either that she actually knew the objects of a charged conspiracy or that she consciously avoided knowledge of the objects of that conspiracy.

Accordingly, if you find beyond a reasonable doubt that Defendant Chen was aware that there was a high probability of a fact, but that she deliberately and consciously avoided confirming this fact – such as by purposely closing her eyes to it, or by intentionally failing to investigate it – then you may treat the deliberate avoidance of positive knowledge as the equivalent of knowledge.  If you find that Ms. Chen actually believed that the fact was not so, however, then you cannot find that she was consciously avoiding knowledge of that fact.  Similarly, if the Government merely proves that Ms. Chen was negligent, careless, foolish, or mistaken with regard to a fact, then it has not proven conscious avoidance.

I will explain further how the concept of conscious avoidance applies to the conspiracy charges found in Counts One, Two, and Five of the Indictment.  With respect to the

conspiracy counts, there is an important difference between knowingly and intentionally participating in a conspiracy, on the one hand, and knowing the specific objects or objectives of the conspiracy, on the other.

You may consider conscious avoidance only in deciding whether Ms. Chen knew the objects of the conspiracy.  For example, in connection with Count One, you may consider conscious avoidance in deciding whether Ms. Chen reasonably believed that there was a high probability that the object of the conspiracy was to unlawfully manufacture, distribute, or possess with intent to distribute a controlled substance, and that she deliberately avoided confirming that fact but participated in the conspiracy anyway.  Conscious avoidance may not be used, however, to substitute for finding that Ms. Chen knowingly and intentionally joined the conspiracy in the first place.  It is logically impossible for a defendant to intend to agree to join a conspiracy if she does not know it exists.  But conscious avoidance may be used to support a finding of knowledge of the conspiracy's unlawful objectives.  In other words, the Government can prove either that Ms. Chen actually knew the objects of the conspiracy or that she consciously avoided knowledge of the objects of the conspiracy.

## III.    FINAL INSTRUCTIONS CONCERNING PROCEDURE

1.    Right to See Exhibits and Request Testimony; Communications with the Court

If, during your deliberations, you have any doubt as to any of the testimony, you may request that relevant portions of the trial transcript be sent back to you in the jury room.  If you want any testimony, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of the testimony.

All of the documentary exhibits that have been received in evidence will be sent into the jury room.  If you wish to see or hear any of the video recordings, you may request that,

and we will play the recordings for you here in the courtroom and distribute the accompanying transcript. We will send into the jury room an index of the exhibits that were received in evidence.

If you want to see any physical evidence – for example, the alleged chemicals – you can request that and we will display these items to you again in the courtroom.

If you want any further explanation of the law as I have explained it to you, you may also request that. As I noted earlier, however, you may all take into the jury room your copy of these instructions.

Any communication to me should be made in writing, signed by your foreperson, include the date and time, and be given to one of the marshals. Please make any notes as clear and precise as possible. Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

2.    <u>Duty to Deliberate; Unanimous Verdict</u>

Your function is to weigh the evidence in this case and to decide whether the Government has proven beyond a reasonable doubt each of the essential elements of the crimes with which the Defendants are charged. If the Government has succeeded in meeting its burden as to any count, your verdict as to that count should be guilty; if it has failed to meet its burden as to any count, your verdict as to that count should be not guilty. You must base your verdict solely on the evidence and these instructions as to the law, and you are obligated under your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. As you deliberate, please listen to the opinions of your fellow jurors,

and ask for an opportunity to express your own views.  Every juror should be heard.  No one juror should hold center stage in the jury room and no one juror should control or monopolize the deliberations.

Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy or to prejudice or favor for either side.

Your verdict as to each charge in the Indictment must be unanimous.  However, you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict, or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember that at all times you are not partisans.  You are judges – judges of the facts.  Your sole interest is to determine whether the Government has proven each of the defendant's guilt beyond a reasonable doubt as to the count you are considering.

If you are divided, do <u>not</u> report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.

3.    <u>Juror Notes</u>

If you have taken notes during the trial, your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case.  Any notes that you may take are not evidence.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror, and your notes are not to be shown to any other juror during your deliberations.

4.    <u>Verdict</u>

I have prepared a verdict form for you to use in recording your decision.  Please use that form to report your verdict.

5.    <u>Duties of Foreperson</u>

I referred a moment ago to a foreperson.  It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here.  The foreperson doesn't have any more power or authority than any other juror, and the foreperson's vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  The foreperson will send out any notes, and when the jury has reached a verdict, the foreperson will notify the marshal that the jury has reached a verdict, and you will come into open court and deliver your verdict.

6.    <u>Return of Verdict</u>

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

7.    <u>Rules of Conduct</u>

During your deliberations, all the rules of conduct concerning outside influences remain in effect.  As I have instructed you many times, your verdict must be based solely on the evidence presented in this courtroom.  Accordingly, you are still not permitted to discuss this case with anyone but your fellow jurors, and you may not read anything in the newspapers, over the Internet, or anyplace else about this case.  Also do not listen to or watch any reporting about this case if it should be broadcast on TV, over the radio, or over some other media.

8.    <u>Conclusion</u>

Members of the jury, that concludes my instructions to you.  I ask you to remain seated while I confer with the lawyers to see whether there are any additional instructions that they wish me to give.