# KIRTON LAW FIRM

*Marlon G. Kirton, Esq.*

*Nassau County:*
*175 Fulton Avenue, Suite 305*
*Hempstead, New York 11550*
*Tel. # (516) 833-5617*
*Fax # (516) 833-5620*

August 18, 2025

VIA ELECTRONIC FILING

Hon. Paul G. Gardephe
United States District Court
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

Re: *US v. Yiyi Chen, 23 cr. 302 (PGG),*

Dear Judge Gardephe:

    I represent Yiyi Chen in the above-referenced matter. This letter is a partial reply to the Government's sentencing memorandum.

## BACKGROUND

    Ms. Chen's trial commenced on January 13, 2025, and concluded on January 29, 2025. Ms. Chen was charged with three counts of a five-count indictment. Count One charged conspiracy to manufacture, distribute, or possess with intent to distribute fentanyl or a fentanyl-related substance. Count Two charged conspiracy to import 1-boc-4-AP and Count Five charged conspiracy to commit money laundering. The jury found Ms. Chen not guilty on Count One, guilty of Count Two, and guilty of Count Five. Concerning Count Two, the jury was presented with two questions: if and only if they found her guilty: 1. Whether or not she intended that the 1-boc-4-AP be used to manufacture fentanyl? 2. Whether or not she knew or had reasonable cause to believe that the 1-boc-4-AP would be used to manufacture fentanyl? Regarding Question 1, the jury answered 'no'. Regarding Question 2, the jury answered 'yes'. The jury found her guilty of Count Five.

    Yiyi Chen testified in her defense.

    The Government requests a two-level enhancement pursuant to USSG 3C1.1 because they claim she committed perjury during her testimony. *Govt sentencing memo at 28*. The Government claims that Ms. Chen lied on four occasions: 1. She testified that she did not recognize product webpages for 1-boc-4-AP, 1-boc-4-piperidone, and methylamine on various websites. *Id at 29*.

1

Furthermore, she testified that she did not recognize an Amarvel Biotech product webpage describing 1-boc-4-AP, an intermediate in the preparation of Fentanyl derivatives. *Id at 30.* 2. Testified falsely when she said CS Gil wanted her company to make a better product that could save lives. 3. Chen testified that she did not think that CS Gil intended to violate the laws of the United States. *Id at 31.* 4. She testified that she read the three Voice of America articles and found them very confusing. *Id.*

## CASE LAW

The Defense objects to an enhancement for obstruction of justice based on Ms. Chen's trial testimony. The Second Circuit has addressed the issue. *United States v. Rosario*, F.3d 630, 633 (2nd Cir. 2021). The Circuit, citing Supreme Court precedent, held that the district court must make findings to support all the elements of a perjury violation. *Id at 633, citing United States v. Dunnigan,* 507 US 87 (1993). To impose an enhancement, a district court must find: 1. The defendant willfully and 2. Materially 3. Committed perjury, which is (a) the intentional (b) giving of false testimony ( c ) as to a material matter. *Id at 633.*

Testimony that contradicts other evidence in a case does not amount to perjury. *United States v. Orelien*, 9 F. 4th 217, 229 (2nd Cir. 2024). (Defendant's testimony at a suppression hearing contradicted his statement given to a pretrial services officer. Circuit remanded because the district court did not make a proper willfulness finding.) The false statement must also be material and willful. *Id.*

## ARGUMENT

None of the testimony identified by the Government contradicts either a prior sworn statement from Ms. Chen or any other statement she made at any stage of this proceeding. The Defendant in the *Orelien* case testified at a suppression hearing to facts that contradicted a statement he gave to his pretrial services officer. *Id.* Under those circumstances, a district court can make a line-by-line comparison between the statements and make a specific ruling. The district court could also examine context, i.e., whether or not the same questions were asked on each occasion.

Here, the first alleged false statement falls into the category of *Do you recognize this exhibit?* The Government seized Ms. Chen's computer after she was arrested in Fiji. The Government managed to access the data on the computer and turned it over to the Defense as part of Rule 16 discovery. Later excerpts from the data were made part of several Government exhibits. At trial, Ms. Chen testified that she developed the websites, the Home Page, and the About Page of the companies owned by Mr. Xia. *Defense sentencing memo at 6.* She also registered domain names for the salespersons. *Id.* However, the salespersons had their own websites and created the content for all of the product webpages. *Id.* There was no testimony that Ms. Chen developed the product pages. *Id.* The Government presented no evidence at the trial that Ms. Chen created the webpages with the product information. Government witness, Kevin Tian, testified that he received Ms. Chen's MacBook and copied a forensic image onto a separate drive. *Trial Tr. 997-998.* MacBooks contain a large amount of data. Ms. Chen could not possibly recall all of the data on her device. The Government did not present any evidence that Ms. Chen viewed GX 203, GX 719, GX 208, and GX 745. The Government did not present a case where a district court made a finding of

perjury for a trial defendant failing to recall an item recovered from his laptop.

Next, the Government argues that Ms. Chen's interpretation of a conversation she had with CS Gil was, in fact, perjury. *Government Sentencing memo at 30-31.* As a threshold matter, none of the DEA Confidential Sources said that they were Mexican Drug traffickers seeking to sell fentanyl to Americans. During the conversations in Thailand and Fiji, Ms. Chen acted as a translator and had no operational authority. *Defense Sentencing memo at 7.* The witness testified to the following colloquy:

*QUESTION: Mr. Rodriguez, now looking at page 3 of Government Exhibit 502C-T. What are you referring to here in line 5?*

*ANSWER: That due to the strongest fentanyl, couple Americans have died.*

*QUESTION: Why were you raising this issue with Ms. Chen?*

*ANSWER: I was just to discuss if they had any formula or other recommendations.*

*QUESTION: Mr. Rodriguez, directing your attention to line 19. Where Chen says, "My boss said, of course, we will be pleasure to help you for this technology." Do you see that right there?*

*ANSWER: Yes.*

*QUESTION: What did you understand her to mean by "technology"?*

*ANSWER: Like chemist technician or for the formula.*

*QUESTION: And the formula for what?*

*ANSWER: To Make fentanyl less purity.*[1]

The Government's witness says that the conversation was about making the formula less potent so that no one would overdose. Ms. Chen and the Government witness have the same understanding regarding this conversation.

*QUESTION: What did that mean to you?*

*ANSWER: He said he would manufacture the product, and he also asked manager Wang for formula. And he mention that the people will die if it is too concentrated, and he said he wanted to build grand labs in new York, and he wanted to find professional team to assist him to develop a better safer product that way he could save lives.*[2]

Ms. Chen did not commit perjury in this instance.

Next, the Government argues that she lied when she testified that she did not believe the

---

[1] *Excerpts from Trial Transcript page 469 Line 1 to 470 Line 13.*
[2] *Trial Transcript page 1193 Lines 12-18.*

Confidential sources intended to violate the laws of the United States. *Government sentencing memo at 31*. None of these witnesses testified that they were Mexican drug traffickers looking to sell fentanyl to Americans in violation of US law. The cryptic reference cited by the Government does not give rise to willful perjury by Ms. Chen. Ms. Chen is not a trained translator. *Defense sentencing memo at 6.* She was hired for other purposes by the companies owned by Mr. Xia. *Id at 5-6.* Her English proficiency was better than that of her coworkers, and she accompanied Mr. Wang abroad for these meetings. *Id.* The failure of the CS's to make their business plain to Ms. Chen deals a fatal blow to the Government's argument. Ms. Chen, a native Mandarin speaker, could not possibly grasp the nuances suggested by the Government.

Finally, the Government argues that Ms. Chen lied when she testified that reading the Voice of America articles left her "very confused." *Government Sentencing memo at 31*. In support of this argument, the Government points to her correcting the interpreter during her testimony and her impressive 14-page letter to this Court. *Id.* The Government's arguments are misplaced. Ms. Chen testified that she speaks and reads English, but she does not speak English as well as she reads English. *Trial Tr. page 1125 Line 20 to page 1126 Line 10*.[3] She testified that she uses a Mandarin interpreter for her testimony because she wants to express herself as clearly as possible. *Id.* She never testified that she had problems comprehending the Voice of America article*. Id at 1196.* She testified that the reason for her confusion is that the articles contained the American version of the US fentanyl problem and the Chinese version of the US fentanyl problem, and she did not know which version to believe. *Id.*

The Defense objects to the Government's request for an obstruction of justice enhancement based on Ms. Chen's testimony.

Sincerely,

*Marlon Kirton*
Marlon G. Kirton, Esq.


cc: Alexander Li, Assistant United States Attorney (via electronic filing)

Kevin Sullivan, Assistant United States Attorney (via electronic filing)

Shaoming Cheng, Esq. (via electronic filing)

---

[3] *There were several instances throughout the trial that the Mandarin interpreter needed clarification and conferred with Ms. Chen, see Trial transcript pages 1246 and 1247.*